CHI ENERGY, INC. and
Chi Operating, Inc.,
Appellants,

v.

Gabriela Reyes URIAS, Individually and as Next Friend of Natalie Ann Urias, a Minor, Gilbert U. Urias, Sr., Maria Urias, Lucy Pallanes, and Isabel Pallanes, Jesusita Martinez Pallanes, Individually and as a Representative of the Estate of Norman Pallanes, Deceased, also as Next Friend of Zacariah Adam Pallanes, Jeremiah Matthew Pallanes, Jonathan Elijah Pallanes, John Michael Pallanes, Hanna Angelita Pallanes, Minor Children of Decedent, Appellees.

No. 08–02–00475–CV.

Court of Appeals of Texas,
El Paso.

Jan. 27, 2005.

Rehearing Overruled March 9, 2005.

Gary M. Bellair, Craig, Terrill & Hale, L.L.P., Lubbock, Scott M. Tidwell, Tidwell & Tidwell LLP, Odessa, for Appellants.

Steven L. Hughes, Mounce, Green, Myers, Safi & Galatzan, El Paso, for Appellees.

1. Petroplex was a settling defendant who was retained as an independent consultant to co-

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

This is an appeal from a jury verdict in a premises liability case that resulted in the deaths of Norman Pallanes and Gilbert Urias during the construction of improvements to an oil well site. Appellant Chi Energy, Inc. was the owner of the leasehold interest in the oil well involved in this incident. Chi Energy, Inc, operating through its subsidiary, Chi Operating, Inc., undertook the drilling of an oil well that became known as the UL 18–19 No. 1. Chi Operating, Inc. served as the operating company responsible for the handling of the day-to-day operations at this and other well sites. Other defendants that were included in the original lawsuit either settled or were nonsuited prior to trial. The case went before a jury against Appellants and one other defendant, Garland Pumping & Roustabout Services, Inc., who ultimately settled after trial. The jury awarded $7,880,272.97, in actual damages against all the defendants. The judge entered a judgment in that amount, apportioning the claim in conformance with the jury's findings of proportionate recovery on the part of each plaintiff with the addition of pre- and post-judgment interest.

The Chi defendants appealed in separate briefs raising different points of error. Chi Operating asserted five points of error and Chi Energy asserted seven points of error. Chi Energy's Issue Nos. One through Four challenge the legal and factual sufficiency of the evidence of the jury's findings that Chi Operating and Petroplex[1], retained or exercised some con-

ordinate and monitor the work of various

trol over the manner of the performance of the work at the site to result in liability of Chi Energy for the incident in question. We read these issues together as a challenge to the legal and factual sufficiency of the evidence to support the jury's findings that Chi Energy is liable for the acts of the independent contractors West Texas Roustabout (WTR) or West Texas Tank (WTT) under Chapter 95 of the Texas Civil Practice and Remedies Code.

Similarly, Chi Operating has appealed asserting five issues. We read Chi Operating's Issue Nos. One through Three as a challenge to the legal and factual sufficiency of the evidence to support the jury's findings of liability of Chi Operating for the actions of the independent contractors, West Texas Roustabout or West Texas Tank under Chapter 95 of the Texas Civil Practice and Remedies Code. Because these issues are dispositive of this appeal, we do not reach the Appellants' remaining issues and, for the reasons stated herein, we reverse the judgment of the trial court and render judgment in favor of Appellants.

## I. ISSUES SUBMITTED ON APPEAL

Appellants collectively have submitted twelve issues on appeal. A review of the briefs establishes that the substantive complaint on appeal is that the trial court erred in rendering judgment against Appellants based upon the lack of legally and factually sufficient evidence to support a finding of liability under Chapter 95 of the Texas Civil Practice and Remedies Code. Because the statement of an issue or point will be treated as covering every subsidiary question that is fairly included, we consider the dispositive issues together. TEX.R.APP. P. 38.1(e).

independent contractors retained to facilitate the completion of the well.

## II. SUMMARY OF THE EVIDENCE

On April 6, 2001, an explosion occurred at an oil well site located in Ward County, Texas just northwest of Pyote, Texas resulting in the deaths of Norman Pallanes and Gilbert Urias. Appellant Chi Energy, Inc. is a company in the business of speculation and development of oil and gas properties throughout Texas and New Mexico. Appellant Chi Operating, Inc. is a corporation in the business of operation and production of oil wells. Chi Operating was responsible for the day-to-day operations which included beginning production on a well, maintaining production, and oversight of the daily management functions to keep a well operating. Chi Operating also was responsible for retaining various independent contractors to perform the necessary tasks related to the routine operation of an oil well. The well where the accident occurred was a new well in the process of being put into production. The explosion that resulted in the deaths of the decedents occurred during the construction of the infrastructure and improvements to the well site that was necessary for the production of petroleum products from this well.

Chi Operating contracted with several entities to bring the well to operation, including Petroplex Equipment, Inc., a closely held corporation owned by Oren Albright. Petroplex was retained by Chi Operating to function as the well site consultant responsible for completing and putting the UL 18–19 No. 1 well into production. Chi Operating also entered into an oral agreement with WTT or WTR for the purchase of used equipment. The agreement contemplated a "turnkey" purchase which required WTT to deliver and install reconditioned tank-battery vessels[2] to the well site.

2. Tank-battery vessels, include a separator, a heater/treater, a water tank and two stock

Norman Pallanes was the owner of West Texas Roustabout and Gilbert Urias was an employee of WTR. WTR was a roustabout company that provided roustabout services for oilfield clients. WTR had agreed to provide refurbished tank-battery vessels in ready condition to the site of the oil well involved in the incident in question.

The record contains a detailed account of the activities related to the work performed by various independent contractors on the job during the course of several days in early April of 2001. Once the well was completed, several other improvements had to be constructed or installed to allow the well to produce. Critical to the production oil from this well was the installation of the tank system purchased from WTR. WTR delivered the used tanks to the site before removing all the extraneous fittings that remained from a previous installation; the tanks were not ready for use in production. The deliveries took place over a three-day period. WTR finally completed delivery of the partially reconditioned tanks on Wednesday April 4, 2001. Employees of WTR began working on the completion of the installation of the tanks on Thursday and Friday, April 5, and 6, 2001. WTR employees installed stairs and catwalks on the tanks. The other independent contractors continued to complete their tasks which ultimately required the necessity of connecting to the WTR tanks. Garland Pumping and Roustabout Services, Inc. continued to plumb various items of equipment on the location. At one point, an employee of Garland, Randy Hernandez and Albright discussed that the tanks were not ready to

be connected to the other equipment already in place and needed additional work. Specifically several extraneous fittings needed to be removed from the tanks. Norman Pallanes was informed of the problems with the tanks and was aware that the fittings needed to be removed.

The record is replete with details about the steps followed by Albright and other contractors during the construction and testing activities that took place over the time period of April 5–6, 2001. The weather conditions on April 6 were particularly bad and ultimately resulted in Albright's closing of the site. Albright informed Pallanes that he was shutting down the site. Nevertheless, Pallanes contacted his brother, Roman Pallanes[3], and requested that a welder be sent to the site. Roman Pallanes dispatched a welder, employed by the companies to work on the fittings.

When the welder arrived at the site, he found only Garland's crew still working. After talking with Randy Hernandez, he telephoned Norman Pallanes for assistance because the job was bigger than he could handle by himself. Pallanes and Urias were working at a different well site but came over to the UL 18–19 No. 1 within a short period of time. Hernandez told Pallanes that Albright had shut down the site due to the inclement weather but Pallanes was determined to work on removing the extraneous fittings.

Employees of Garland were the last employees at the site on Friday afternoon April 6, 2001. Oren Albright had left earlier to return to his Midland office. Albright testified that at the time he left,

_____

tanks, all for use in producing oil, gas and water from an oil well. WTT was in the business of procuring used tanks and equipment for the purpose of resale to subsequent users. In this case, they had agreed to provide the tanks for the oil well owned and operated by the Chi defendants.

**3.** Roman Pallanes is an owner of West Texas Tank and the brother of the decedent Norman Pallanes.

there was no equipment at the site capable of placing heat on the tank that eventually exploded.

Pallanes and his crew remained at the site alone and began work on removal of the extraneous fittings from the tanks. Initially, Pallanes, Gilbert Urias, and his welder used wrenches and cheaters in their attempts to remove the fittings. When that was unsuccessful, he instructed his welder to begin placing heat on the fitting by using a cutting torch owned by West Texas Roustabout. The welder applied heat for approximately 8 to 10 minutes but when the operation was not successful, Norman Pallanes sent the welder back to the truck to retrieve some additional tools. While the welder was at the truck, the water tank exploded killing Norman Pallanes and Gilbert Urias.

One group of survivors sued for damages on April 18, 2001 and the remaining survivors filed a Plea in Intervention joining the suit on May 29, 2001. After a trial to a jury, the trial court entered judgment on the findings in the amount of $7,880,272.97 plus pre- and post-judgment interest. Chi Energy, Chi Operating, and Garland Pumping appealed. After Garland reached a settlement with the plaintiffs below, Chi Energy and Chi Operating remain as the only appellants and they appeal from the trial court's judgment below.

## III. DISCUSSION

As stated previously, while reviewing Appellants' issues, we read Chi Energy's Issue Nos. One through Four and Chi Operating's Issue Nos. One through Three, as an attack on the legal and factual sufficiency of the evidence supporting the jury's finding of liability under Chapter 95 of the Texas Civil Practice and Remedies Code.

### A. Legal and Factual Sufficiency Standard of Review

A "no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact finding. There are basically two separate "no evidence" claims. When the party having the burden of proof suffers an unfavorable finding, the point of error challenging the legal sufficiency of the evidence should be that the fact or issue was established "as a matter of law." When the party without the burden of proof suffers an unfavorable finding, the challenge on appeal is one of "no evidence to support the finding." See Creative Manufacturing, Inc. v. Unik, 726 S.W.2d 207, 210 (Tex.App.-Fort Worth 1987, writ ref'd n.r.e.). The standard of review requires a determination by the appellate court as to whether, considering only the evidence and inferences that support a factual finding in favor of the party having the burden of proof, in a light most favorable to such findings, and disregarding all evidence and inferences to the contrary, there is any probative evidence which supports the finding. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.1965); see Terminix Intern., Inc. v. Lucci, 670 S.W.2d 657, 662 (Tex.App.-San Antonio 1984, writ ref'd n.r.e.); see also Dayton Hudson Corp. v. Altus, 715 S.W.2d 670, 672 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). If more than a scintilla of evidence supports the finding, the "no evidence" point fails. Tseo v. Midland Am. Bank, 893 S.W.2d 23, 25 (Tex.App.-El Paso 1994, writ denied); Hallmark v. Hand, 885 S.W.2d 471, 474 (Tex.App.-El Paso 1994, writ denied).

"Insufficient evidence" or factual insufficiency involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong. When the party having the burden of

proof complains of an unfavorable finding, the point of error should allege that the findings "are against the great weight and preponderance of the evidence." The "insufficient evidence" point of error is appropriate only when the party without the burden of proof on an issue complains of the court's findings. *See Neily v. Arron,* 724 S.W.2d 908, 912 (Tex.App.-Fort Worth 1987, no writ).

The test for factual insufficiency points is set forth in *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). In reviewing a point of error asserting that a finding is against the great weight and preponderance of the evidence, we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact, as well as evidence which tends to disprove its existence. It is for the jury to determine the weight to be given to the testimony and to resolve any conflicts in the evidence. *Carrasco v. Goatcher,* 623 S.W.2d 769, 772 (Tex.App.-El Paso 1981, no writ). The jury's finding should be sustained if there is some probative evidence to support it and provided it is not against the great weight and preponderance of the evidence. *Id.* The parlance used by the courts of appeals is that such a finding "shocks the conscience" or that it is "manifestly unjust," limited by such phrases as "the jury's determination is usually regarded as conclusive when the evidence is conflicting," "we cannot substitute our conclusions for those of the jury," and "it is the province of the jury to pass on the weight or credibility of a witness's testimony." *Kimsey v. Kimsey,* 965 S.W.2d 690, 700 (Tex.App.-El Paso 1998, pet. denied); *Beall v. Ditmore,* 867 S.W.2d 791, 795 (Tex.App.-El Paso 1993, writ denied). Thus, we cannot substitute our judgment for that of the fact finder even if we find a fact contrary to that found by the jury, provided the jury finding is supported by probative evidence and is not against the

great weight and preponderance of the evidence. If, however, the verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained.

## B. Civil Practice and Remedies Code Chapter 95

Chapter 95 of the Civil Practices and Remedies Code was enacted in 1996 as part of a sweeping tort-reform package. Tex. Civ. Prac. & Rem.Code Ann. §§ 95.001–.004 (Vernon 1997); *see Fisher v. Lee & Chang P'ship,* 16 S.W.3d 198, 201 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). Chapter 95 governs "Property Owner's Liability for Acts of Independent Contractors and Amount of Recovery" and pertains to claims "for damages caused by negligence" against a "property owner." Tex. Civ. Prac. & Rem.Code Ann. § 95.001(1)–(3) (Vernon 1997). Section 95.001(3) defines "property owner" as "a person or entity that owns real property primarily used for commercial or business purposes." Tex. Civ. Prac. & Rem.Code Ann. § 95.001(3). Chapter 95 specifies that it "applies only to a claim" described as follows: (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement. Tex. Civ. Prac. & Rem.Code Ann. § 95.002(1)–(2) (Vernon 1997).

■ When Chapter 95 applies, a property owner will not be liable for negligence claims arising from the failure to provide a safe workplace unless: (1) the property owner exercises or retains some control over the manner in which the work

is performed, other than the right to order the work to start or stop or to inspect progress and receive reports; and (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death or property damage and failed to adequately warn. TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(1)–(2) (Vernon 1997). Both conditions of section 95.003 must be met before liability will be imposed upon the property owner. *Id.; see Kelly v. LIN Television,* 27 S.W.3d 564, 567 (Tex.App.-Eastland 2000, pet. denied). The "failure to provide a safe workplace" means that the injuries must relate to work being done by the injured party, but the injury-producing defect need not be the object of the injured party's work. *See Fisher,* 16 S.W.3d at 202 (construing legislative history and holding that injury resulting from defective ladder contractor used to access air-conditioning unit contractor was hired to repair was injury within scope of section 95.002(2)).

## C. Applicability of Chapter 95

We conclude that Chapter 95 governs all of Appellees' negligence claims against Appellants. It is clear that the legislature, following years of Texas jurisprudence, intended to limit the liability of an owner and operator for injuries arising out of an independent contractor's actions through the enactment of Chapter 95 of the Texas Civil Practice and Remedies Code. *Ashabranner v. Hydrochem Industrial Services, Inc.,* No. 14–03–00762–CV, 2004 WL 613026, at *2 (Tex.App.-Houston [14th Dist.] March 30, 2004, no pet.); *see also Redinger v. Living,* 689 S.W.2d 415, 418 (Tex.1985). Both requirements under section 95.003 of the Civil Practice and Remedies Code must be met before a landowner can be held liable for injuries sustained by an independent contractor's employee. First, the landowner must have more than a general right to order work-

ers to stop or start, a right to inspect, or right to receive reports. TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(1) (Vernon 1997); *Ashabranner,* 2004 WL 613026, at *2; *see also Koch Refining Co. v. Chapa,* 11 S.W.3d 153, 155 (Tex.1999) (per curiam) (citing Restatement (Second) of Torts § 414 (1965)). Second, the land owner must have " 'actual knowledge of the danger or condition resulting in the personal injury . . . and failed to adequately warn.' " TEX. CIV. PRAC. & REM.CODE ANN. § 95.003 (Vernon 1997); *Ashabranner,* 2004 WL 613026, at *2; *see also Fisher,* 16 S.W.3d at 202. After reviewing the entire appellant record, we agree there is no evidence to show control or actual knowledge as required by section 95.003.

We address the issue of control first. Control may be proven in two ways: (1) a contractual right of control or (2) an exercise of actual control. *Ashabranner,* 2004 WL 613026, at *2; *Dow Chem. Co. v. Bright,* 89 S.W.3d 602, 606 (Tex.2002). A right of control is contingent upon the ability to control the means, methods, or details of WTT's and WTR's work. *Ashabranner,* 2004 WL 613026, at *2. The question as to whether or not there is a contractual right of control is generally a question of law for the court. *Id.*

We agree with Appellants that the question of the right to control the work of WTR and WTT is dispositive of the case before us. To impose liability on the Chi defendants, Appellees must prove that the degree of control must be more than "the right to order the work to start or stop or to inspect progress or receive reports. . . ." TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(1). The record is completely devoid of any evidence to suggest that either of the Appellants imposed any right to control the work at the site in question and certainly none over the specifics of the

work performed by the employees of WTR or WTT. The detailed testimony of the various subcontractors that performed a variety of tasks at the scene support the Appellants' position that they had no right to control the daily tasks of any of the independent contractors and particularly the work of WTT or WTR.

The undisputed evidence establishes the contrary fact as a matter of law. Norman Pallanes directed that his employee Gilbert Urias and his welder return to the site after everyone else had left and perform specific tasks solely under his direction and control, using his equipment to perform tasks that he was obligated to perform under his agreement as an independent contractor responsible for providing turnkey ready tanks. No one, not even Petroplex's Oren Albright, retained any control over Norman Pallanes's decision to apply heat to the tank that eventually exploded. We recognize that the tank itself was not an inherently dangerous item. *See, e.g., Delgado v. Houghston,* No. 08–99–00044–CV, 2000 WL 678774, at *4 (Tex. App.-El Paso May 25, 2000, no pet.) (not designated for publication). The circumstances that resulted in the explosion was the application of heat to the tank by Norman Pallanes. Though tragic, the decision regarding how to handle the extraneous fitting problem was solely the decision of Norman Pallanes.

We agree with Appellants that the right to control the work must extend to the "operative detail" of the contractor's work. The right to control may be proved "'by evidence that the premises owner actually exercised control over the manner in which the independent contractor's work was performed.'" *Conoco, Inc. v. Brown,* No. 04–02–00336–CV, 2003 WL 22295302, at *1 (Tex.App.-San Antonio October 8, 2003, pet. denied); *Dow Chem. Co.,* 89 S.W.3d at 606. The degree of control retained must be more than a mere "'general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.'" *Conoco, Inc.,* 2003 WL 22295302, at *1; *Koch Ref. Co.,* 11 S.W.3d at 155 (quoting Restatement (Second) of Torts § 414 cmt. c (1965)). In other words, the right to control must extend to the "operative detail" of the contractor's work. *Conoco, Inc.,* 2003 WL 22295302, at *1; *Koch Ref. Co.,* 11 S.W.3d at 155–56; *Victoria Elec. Co-op., Inc. v. Williams,* 100 S.W.3d 323, 326 (Tex.App.-San Antonio 2002, pet. denied). Moreover, there must be a nexus between the control actually exercised and the resulting injury. *Conoco, Inc.,* 2003 WL 22295302, at *1; *Dow Chem.,* 89 S.W.3d at 606.

Here, we see no evidence to support a finding that the Appellants retained any control over the "operative details" of the work. Similarly, we find no evidence to support the finding that Appellants had actual knowledge of a danger or condition such that they incurred a duty to warn Pallanes of the existence of a hazard at the site. Recognizing that they had no control over the site and virtually no contact with the independent contractors directly, we hold Appellants had no actual knowledge of any allegedly dangerous condition at that site. Chapter 95 of the Texas Civil Practice and Remedies Code only imposes a duty to warn of a known danger or condition. TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(2); *see also Ashabranner,* 2004 WL 613026, at *2. The record does not contain even a scintilla of evidence to support such a finding.

Because there is no evidence that Appellants exercised any control over WTR or WTT employees or that Appellants had actual knowledge of any dangerous condi-

tion at the site, we sustain, Appellants' Issue Nos. One through Three and Issue Nos. One through Four, as described above, and reverse the judgment of the trial court. Because these issues are dispositive of this appeal, we need not reach the remaining issues.

We, therefore, having sustained Appellants' Issue Nos. One through Three and Issue Nos. One through Four on the basis of legal insufficiency of the evidence, we reverse the judgment of the trial court and render judgment in favor of Appellants.

LARSEN, J., not participating.