Reversed and Rendered and Opinion filed January 9, 2007













Reversed and
Rendered and Opinion filed
January 9, 2007.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-05-00909-CV

____________

 

ELLWOOD TEXAS FORGE CORPORATION, Appellant

 

V.

 

BOBBY JONES AND KELLY JONES, Appellees

 





 

On Appeal from the 151st
District Court

Harris County,
Texas

Trial Court Cause No. 02-48971

 





 

O P I N I O N

 

Ellwood Texas Forge Corporation (AEllwood@) hired Process
Installations (API@), an independent
contractor, to remove and replace an air conditioning unit on top of a machine
called a Amanipulator@ on Ellwood=s premises. 
Bobby Jones, an employee of PI, was injured when he fell from the top of the
manipulator.  He and his wife, Kelly, sued Ellwood for negligence.  A
jury returned a verdict in favor of the Joneses, and the trial court entered a
final judgment on the jury=s verdict.  On appeal, Ellwood
contends, among other things, that the evidence is legally and factually
insufficient to support the jury=s finding that Ellwood
retained or exercised control over PI=s work, as
required by section 95.003 of the Texas Civil Practice and Remedies Code. 
For the reasons explained below, we agree with Ellwood and reverse and render a
take-nothing judgment against the Joneses.

Factual
Background

Ellwood is a steel-forging plant located in Houston, Texas. 
During the forging process, a manipulator is used to transfer heated metal in
and out of furnaces and into a press that is used to shape the metal into
forms.  The manipulator has a cab where the operator sits and operates its
controls.  Because the manipulator is near the furnace, it is hot inside
the cab, so Ellwood installed air conditioning units on its manipulators. 

In June of 2001, Ellwood hired PI, an independent
contractor that had worked for Ellwood in the past and was familiar with the
plant, to perform several jobs on its premises, including removing and
replacing the air conditioning unit on one of the manipulators.  The unit
to be replaced was on top of the manipulator=s cab, about
twelve feet above the ground.  To accomplish the job, PI provided a crew
consisting of a supervisor, Robert Wesley,[1]
and two workers, Bobby Jones and Andy Franco.  Wesley met with Jimmy
Wegner, the maintenance coordinator at Ellwood, to discuss replacing the air
conditioner on the manipulator.  Wegner gave Wesley a copy of the air
conditioning manufacturer=s diagram of the unit, and told him to
replace the old air conditioning unit with a new one.  Wegner gave no
additional directions or orders concerning the work. 

The PI crew went to work removing the old air conditioning
unit and replacing it with the new one.  At some point, as the new unit
was lowered onto its base, Jones climbed up a ladder to the top of the
manipulator to check the unit=s placement while Franco operated a crane
used to lower the unit on top of the manipulator=s cab.  Jones
was not using any fall protection.  After the unit was lowered into place
on top of the cab, Jones fell and was injured.

 

At trial, one of the issues was whether Ellwood controlled
the PI employees= work.  Jones and his wife tried to
show control by highlighting Ellwood=s safety
procedures and the actions of certain Ellwood employees.  Ellwood did not
dispute that it had written safety procedures that applied to independent
contractors as well as to employees.  The procedures required, among other
things, that employees working more than six feet off the ground must use
proper fall protection equipment, and employees were authorized to stop any
work they saw being done in an unsafe manner.  Additionally, before PI
began its assignments for that week, Wegner and Wesley signed an Ellwood Asafe work permit@ that was intended
to identify the jobs PI was to perform and the safety equipment required. 
No specific fall protection devices were identified for use.[2]

Wegner, Ellwood=s maintenance
coordinator, stated that he did not know the PI employees were working on the
manipulator without fall protection, but if he had seen them doing so he would
have stopped the job until proper fall protection was used.  However,
Jones testified that Wegner was standing near the manipulator talking to Wesley
shortly before Jones fell and knew the PI employees were working without fall
protection.[3] 
Both Jones and Wesley testified that Wegner never warned them of any danger or
told them to stop working and get proper fall protection.  Wesley also
testified that about one month or so earlier, Wegner had seen PI employees
working on a similar job on top of a manipulator and knew they were not using
fall protection.  Wegner denied this. 

 

In response to a question from Jones=s attorney, Wegner
agreed that he could control the details of PI=s work Aif he wanted to.@  But Wegner
also testified that Wesley, the PI supervisor, had the right to control the
details of the job he was given.  Billy Matthews, a plant services manager
at Ellwood and Wegner=s supervisor, testified that Wesley, not
Wegner, controlled the details of PI=s work replacing
the air conditioning unit on the manipulator.  Matthews also testified
that Ellwood paid extra for a PI supervisor and skilled workers so the work
could be performed without supervision by Ellwood personnel.[4] 
Concerning safety, Matthews testified that both Wegner and Wesley were
responsible for making sure the work was done safely, and he agreed that Ellwood
personnel could forbid PI from working in a dangerous manner without proper
fall protection.  Matthews also testified that Wesley had permission to
use all of Ellwood=s equipment, including safety equipment on
the premises.

Robert Wesley testified PI=s safety program
was Abasically the
safety plan of the plant that we worked in@ and that A[t]he
responsibility for the safety and the job itself was mine because it was our
crew.@  He agreed
that he had access to and could use Ellwood=s safety equipment
without asking permission.  Wesley also agreed that he knew that fall
protection was needed, but he did not believe that fall protection devices
could be used in the area,[5]
so he instead decided to proceed with the work carefully.  Concerning
control over the work, Wesley agreed that Ellwood was paying PI not only for
labor but for supervision of the job.  Wesley testified that, once Wegner
gave him the assignment of replacing the air conditioning unit on the
manipulator, the details of the work were left to his discretion, judgment, and
control, and he did not expect anyone at Ellwood to tell him or his crew how to
go about the details of their work.  He also stated that the manufacturer=s diagram of the
air conditioning unit that Wegner gave him was of no use to him, and he relied
on his experience and skill to complete the job.  Finally, Wesley admitted
that even if fall protection were checked off on the safe work permit, he and
his crew would still have gone about the job the same way.

 

Analysis

In its first issue, Ellwood contends the evidence is
legally and factually insufficient to support the jury=s finding that
Ellwood retained or exercised control over the manner in which the air
conditioner installation on the manipulator was performed, as is required under
Texas Civil Practice and Remedies Code Chapter 95 to impose liability on a
property owner for the acts of an independent contractor or its employee. 
Ellwood contends that Chapter 95 eliminates passivity by the premises owner as
a basis of liability for injury to a contractor or its employees on the
premises, because it requires proof of a landowner=s actual control
and subjective awareness of a danger before liability will be imposed. Jones
responds that, because the evidence is legally and factually sufficient to show
that Ellwood had the right to forbid PI from working without fall protection
and to dictate what fall protection PI used, and that Ellwood=s supervisor knew
PI was working in an unsafe manner, Ellwood had a duty to stop PI=s employees from
working in an unsafe manner.  

For the reasons explained below, we disagree with Jones and
hold that Ellwood=s right to forbid PI employees from doing
their work in a dangerous manner is insufficient to impose a duty on Ellwood to
ensure that PI and its employees followed Ellwood=s safety rules and
regulations.

I.       
Standards of Review

When both legal and factual sufficiency challenges are
raised on appeal, an appellate court must first examine the legal sufficiency
of the evidence.  See Manon v. Tejas Toyota, Inc., 162 S.W.3d 743,
752 (Tex.
App.CHouston [14th
Dist.] 2005, no pet.) (citing Glover v. Tex. Gen. Indem. Co., 619 S.W.2d
400, 401 (Tex.
1981)).  

 

We will sustain a legal sufficiency or Ano‑evidence@ challenge if the
record shows one of the following: (1) a complete absence of a vital fact; (2)
rules of law or evidence bar the court from giving weight to the only evidence
offered to prove a vital fact; (3) the evidence offered to prove a vital fact
is no more than a scintilla; or (4) the evidence establishes conclusively the
opposite of the vital fact.  City of Keller v. Wilson, 168 S.W.3d
802, 810 (Tex.
2005) (citing Robert W. Calvert, ANo Evidence@ and AInsufficient
Evidence@ Points of Error, 38 Tex. L. Rev. 361, 362B63 (1960)). 
We consider the evidence in the light most favorable to the verdict and indulge
every reasonable inference that supports it.  Id. at 822.  But, Aif the evidence
allows of only one inference, neither jurors nor the reviewing court may
disregard it.@  Id. 
The evidence is legally sufficient if it would enable reasonable and fair‑minded
people to reach the verdict under review.  Id. at 827.  We credit favorable
evidence if reasonable jurors could credit it, and disregard contrary evidence
unless reasonable jurors could not disregard it.  See id.  We
cannot substitute our judgment for that of the jury, so long as the evidence
falls within the zone of reasonable disagreement.  See id. at 822. 

When considering a factual sufficiency challenge to a jury=s verdict, we must
review and weigh all of the evidence, not just the evidence that supports the
verdict.  See Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406B07 (Tex. 1998); Nip v. Checkpoint Sys., Inc., 154
S.W.3d 767, 768B69 (Tex.
App.CHouston [14th
Dist.] 2004, no pet.).  We may set aside the verdict only if it is so
contrary to the overwhelming weight of the evidence that it is clearly wrong
and unjust.  See Maritime Overseas Corp., 971 S.W.2d at 407; Nip,
154 S.W.3d at 769. 

To address Ellwood=s issues on
appeal, we will consider the evidence adduced at trial, to assess if it proved
that Ellwood had a sufficient amount of control over PI=s work.

II.      
Control

A.     
A Brief Review of the Case Law Before Chapter 95 was Enacted.

In Texas, the general rule is that an owner or occupier has
no duty to see that an independent contractor performs work in a safe
manner.  See Abalos v. Oil Development Co., 544 S.W.2d 627, 631
(Tex. 1976).  In 1985, the Texas Supreme Court in Redinger v. Living,
Inc., adopted section 414 of the Restatement (Second) of Torts, which
provided an exception to the general rule when a premises owner or general
contractor exercises some control over the work of an independent contractor or
subcontractor:

 

One who entrusts work to an
independent contractor, but who retains the control over any part of the work,
is subject to liability for physical harm to others for whose safety the
employer owes a duty to exercise reasonable care, which is caused by his
failure to exercise his control with reasonable care.

Redinger
v. Living, Inc., 689 S.W.2d 415, 418 (Tex. 1985) (citing Restatement (Second) of Torts ' 414
(1977)).  The employer=s role must be more than a general right
to order the work to start or stop, to inspect progress, or to receive reports.
 Id. (citing Restatement
(Second) of Torts ' 414, cmt. c (1965)). 

As this court explained in Dyall v. Simpson Pasadena
Paper Co., opinionsCeven Texas Supreme Court opinionsCapplied section 414
inconsistently.  See 152 S.W.3d 688, 697B98 (Tex. Civ. App.CHouston [14th
Dist.] 2004, pet. denied) (en banc) (comparing and contrasting selected post-Redinger
case law).  Some of the cases reached results inconsistent with the
public policy of minimizing work-related injuries.  For example, in two
cases, the Texas Supreme Court held that the employer had the right to control
the independent contractor=s or subcontractor=s work based on
the employer=s own safety requirements and was liable for failing to
require the independent contractor or subcontractor to comply with those safely
requirements.  See id. (discussing Tovar v. Amarillo Oil Co.,
692 S.W.2d 469 (Tex. 1985) and Lee Lewis Const., Inc., v. Harrison, 70
S.W.3d 778 (Tex. 2001)).  In these two cases, we noted in Dyall that
the premises owner or general contractor who incurred liability Awould have been in
a more legally advantageous position if it had not promulgated safety rules and
procedures.@  d. at 698.  

 

In contrast, in other cases, the Texas Supreme Court
rejected the notion that a premises owner had a right to control the
independent contractor=s work as a consequence of promulgating
its own safety measures such as using a safety employee to observe the
contractor=s work or requiring the contractor to comply with the
owner=s safety rules
rules and regulations.  Id. (citing Koch Refining Co. v. Chapa,
11 S.W.3d 153 (Tex. 1999) and Dow Chem. Co. v. Bright, 89 S.W.3d 602
(Tex. 2002)).  As the Texas Supreme Court explained in Dow Chem. v.
Bright, A>it is not enough that the premises owner has merely a
general right to order the work stopped . . . [t]o hold otherwise would deter
general contractors from setting even minimal safety standards.=@  Id.
at 698 (citing Dow Chemical Co. v. Bright, 89 S.W.3d 602, 607B08 (Tex. 2002)).[6]

B.     
Chapter 95 Increased the Requirements for Liability to be Imposed.

As the case law evolved, the Texas Legislature enacted Chapter
95 of the Texas Civil Practice and Remedies Code as part of a sweeping
tort-reform package.  Id. at 699; see Tex. Civ. Prac. & Rem. Code ' 95.001B.004. 
Chapter 95 provides that a property owner is not liable for the personal
injury, death, or property damage to a contractor or his employees who
construct, repair, renovate, or modify an improvement to real property,
including injuries arising from the failure to provide a safe workplace,
unless:

(1)  the property owner exercises or retains some control over the
manner in which the work is performed, other than the right to order the work
to start or stop or to inspect progress or receive reports; and

(2)  the property owner had
actual knowledge of the danger or condition resulting in the personal injury,
death, or property damage and failed to adequately warn. 

Dyall, 152 S.W.3d at
699; Tex. Civ. Prac. & Rem. Code ' 95.003.  

 

The effect of section 95.003 was to codify the Redinger
court=s adoption of section
414 of the Restatement and to further limit a property owner=s liability by
requiring a plaintiff to prove that the owner had actual knowledgeB-as opposed to
constructive knowledgeCof a dangerous condition.  Dyall,
152 S.W.3d at 699.  Consequently, under Chapter 95, the plaintiff has the
burden to show both control and actual knowledge of the danger.  Id. 
An owner may be aware of the danger, but exercise no control, or he may
exercise control and have no actual knowledge of the danger; in either instance,
the owner is statutorily shielded from liability.  Id. 

Here, the jury was asked to consider only the first prongCcontrolCand it is the jury=s affirmative
finding on control that Ellwood challenges.  Guided by the foregoing
discussion, we turn to a review of relevant authorities and the facts of this
case to determine whether the evidence supports the jury=s finding. 

1.      
The case law defines Acontrol@ in a very precise
manner.

Control may be proven in two ways:  (1) a contractual
right of control or (2) an exercise of actual control.  Dow Chem. Co.
v. Bright, 89 S.W.3d 602, 606 (Tex. 2002); Elliott-Williams Co., Inc. v.
Diaz, 9 S.W.3d 801, 804 (Tex. 1999); Chi Energy, Inc. v. Urias, 156
S.W.3d 873, 879 (Tex. App.CEl Paso 2005, pet. denied).  The
owner, to be liable, must have the right to control the means, methods, or
details of the independent contractor=s work to the
extent that the independent contractor is not entirely free to do the work his
own way.  Diaz, 9 S.W.3d at 804.  A[T]he right to
control the work must extend to the >operative detail= of the contractor=s work.@  Urias,
156 S.W.3d at 880.  Further, the control must relate to the injury the
negligence causes.  Diaz, 9 S.W.3d at 804.  It is not enough that
the owner has the right to order the work to stop and start or to inspect
progress or receive reports.  SeeBright, 89 S.W.3d at 606; Tex. Civ. Prac. & Rem. Code ' 95.003(1). 
Nor is it enough to recommend a safe manner for the independent contractor=s employees to
perform the work.  Bright, 89 S.W.3d at 607.  

 

In Hoechst-Celanese Corp. v. Mendez, the Texas
Supreme Court held that, when an employer requires an independent contractor to
observe workplace safety guidelines, it does not impose on the employer an
unqualified duty of care to ensure that the independent contractor=s employees did
nothing unsafe.  See 967 S.W.2d 354, 357B58 (Tex. 1998)
(per curiam).  Instead, the employer owes a narrow duty Athat any safety
requirements and procedures it promulgated did not unreasonably increase,
rather than decrease, the probability and severity of injury.@  Id.
at 358.  This result, the Court explained, was consistent with its prior
precedents and section 414 of the Restatement, because the employer=s duty of care was
Acommensurate with
the control it retain[ed] over the contractor=s work.@  Id.
at 357. 

The next year, in Koch Refining Co. v. Chapa, the
Court again considered the duty of a premises owner to an independent
contractor and its employees, and held that the premises owner, merely by
placing a safety employee on the work site to observe the independent
contractor=s work, did not incur a duty to an independent
contractor=s employees to intervene and ensure that they perform
their work safely.  See 11 S.W.3d 153, 157 (Tex. 1999) (per
curiam).  Moreover, the Court stated that an employee=s willingness to
follow a premises owner=s instructions, though no such
instructions were given, did not constitute legally sufficient evidence of the
premises owner=s right to control such that a duty arises.  Id.
at 156 (citing Coastal Marine Serv. of Tex., Inc. v. Lawrence, 988
S.W.2d 223, 224 (Tex. 1999)). 

Following Mendez and Koch Refining Co., the
Court determined in Dow Chemical Co. v. Bright that the premises owner
did not exercise actual control when it had a safety representative on site who
could have stopped the independent contractor=s employee from
working had it known of the safety hazard on its premises.  See 89
S.W.3d at 608.  The Court also rejected the argument that the premises
owner exercised control because it had implemented a safe work permit system,
which gave it the general right to preclude the work from beginning in the
first instance, but it allegedly failed to properly conduct an on-site
inspection before issuing the safe work permit for the contractor=s work.  Id.
at 608B09.  As the
Court explained, A[t]he fact that Dow implemented a safe
work permit system as an attempt at creating a safer construction site did not
unreasonably increase the probability and severity of Bright=s injury.@  Id.
at 608.  Thus, neither the presence of a Dow safety representative at the
site nor Dow=s safe work permit system constituted evidence that
Dow controlled the method of the independent contractor=s work or its
operative details.  Id. 608B09.

 

2.      
The facts of this case do not prove control.

Turning to the case before us, Jones contends the evidence
shows that Ellwood had a right to enforce its safety rule requiring fall
protection, knew PI was violating this rule, and did not forbid PI from working
in that dangerous manner.  Jones contends Ellwood=s right to forbid
the work from being done in a dangerous manner, combined with its actual
knowledge that Jones and the other PI employees were violating Ellwood=s safety rule by
working over six feet off the ground without fall protection, is sufficient to
impose a duty on Ellwood. 

a)      
The right to forbid does not necessarily equal control.

 

Central to Jones=s claim that
Ellwood retained control over PI=s work is Ellwood=s right to forbid
PI from working without fall protection and to dictate what fall protection PI
used.  The evidence showed that Ellwood=s safety rules
included a rule requiring anyone working over six feet high to use fall
protection.  This rule applied to both Ellwood employees and independent
contractors on its premises, and any Ellwood employee had the authority to stop
any unsafe work being performed on Ellwood=s property. 
Additionally, Jones points to Wegner=s testimony that
(1) if he saw a contractor working higher than six feet without fall protection
it was his responsibility to stop him and either get him fall protection or get
him off the equipment, (2) if he had seen Jones and his coworkers working on
the manipulator without fall protection, he would have Adefinitely@ stopped them, (3)
he would Acertainly@ stop someone he
saw from violating one of Ellwood=s safety rules,
(4) if he saw someone on top of a manipulator it would be his duty to tell them
to get down or get fall protection equipment immediately, and (5) if Wesley had
asked him how to do the job, he would have instructed him on the manner and
details concerning how to do the job safely.  Matthews, Wegner=s supervisor,
agreed that working on the manipulator without fall protection was unsafe, and
Ellwood could (1) forbid the work from being done in a dangerous manner, (2)
forbid PI from using the wrong equipment to do the job, and (3) forbid PI from
doing it out of the man lift in the wrong way.  Jones also contends
Ellwood=s safety program
imposed upon Ellwood=s employees like Wegner a duty to observe
work-related hazards and unsafe behaviors and to tell the workersCincluding
contractorsChow to do the work correctly.  

However, this evidence and the case law do not support
Jones=s contention that Athe right to
forbid the work from being done in a dangerous manner is sufficient to impose a
duty.@  The Supreme
Court has established that a premises owner, by requiring an independent
contractor to follow its safety rules and regulations, does not owe the
independent contractor=s employee a duty to ensure that the
employee does nothing unsafe.  Mendez 967 S.W.2d at 357B58.  Instead,
the premises owner assumes only a narrow duty to ensure that its rules or
requirements do not unreasonably increase the probability and severity of
injury.  Id. at 358.  Moreover, actual control is not
demonstrated when a premises owner=s safe work permit
system gives it the right to preclude work from beginning in the first instance
or stopping it after it has commenced.  Bright, 89 S.W.3d at 608B09.  Nor is
actual control demonstrated when the premises owner places a safety
representative on site to observe the independent contractor=s work.  Koch
Refining Co., 11 S.W.3d at 157 (A[A] premises
owner, merely by placing a safety employee on the work site, does not incur a
duty to an independent contractor=s employees to
intervene and ensure that they safely perform their work.@). 

 

Likewise, the testimony that Wegner had the right to
forbid the work from being performed in a dangerous manner, or that he would
have stopped the work and required fall protection if he had seen Jones
not using fall protection, or that he could have asserted control Aif he had wanted
to@ is insufficient
to impose liability because section 95.003 requires an assertion of actual
control, not simply the possibility of control.  See Koch Refining Co.,
11 S.W.3d at 156 (stating that the possibility that the Koch safety employee might
intervene and forbid the independent contractor=s employee from
working in a dangerous manner was not evidence that Koch exercised the degree
of control necessary to create a duty); Coastal Marine Serv. of Tex., Inc.
v. Lawrence, 988 S.W.2d 223, 226 (Tex. 1999) (AA possibility of
control is not evidence of a >right to control= actually retained
or exercised.@).  

The First Court of Appeals recently rejected an argument
very similar to the argument Jones makes.  In Phillips v. Dow Chemical
Co., the plaintiffs asserted wrongful death, survival, and bystander claims
on behalf of an employee of an independent contractor who died after falling
from scaffolding at Dow=s plant.  See 186 S.W.3d 121,
125 (Tex. App.CHouston [1st Dist.] 2005, no pet.).  The trial court
granted summary judgment in favor of Dow, holding that Dow did not retain or
exercise a right of control over the independent contractor=s work.  Id.
at 125B26.  In
affirming the trial court=s judgment, the court of appeals
explained:

It is undisputed that Dow=s safety
supervisor had the right to order work stopped for safety violations or
concerns and had done so on occasion in the past.  But, this right does
not suffice as a fact issue that could trigger section 95.003(1)=s first condition for
nonliability, because section 95.003(1) explicitly requires that the premises
owner exercise or retain more control over the manner in which work is
performed than the right to order it stopped.  See Tex. Civ. Prac. & Rem. Code ' 95.003; Dow
Chem. Co., 89 S.W.3d at 608.  Moreover, although it is also undisputed
that Dow engaged independent safety personnel to supervise the cleanup project,
mere presence of the premises owner's safety personnel at a worksite is
likewise insufficient to demonstrate that the owner actually exercised control
over the work.  See Dow Chem. Co., 89 S.W.3d at 608.

Id. at 135.  We
agree that a premises owner=s right to forbid independent contractors
from beginning or continuing their work in an unsafe manner is not evidence of actual
control.

b)      
Contrary to Jones=s claim, facts
peculiar to this appeal do not prove Ellwood exercised control.

 

Jones contends, however, that additional facts not present
in other cases show that Ellwood did incur a duty to prevent PI=s employees from
working on the manipulator without fall protection.  Jones points to the
testimony that Ellwood=s maintenance coordinator, Jimmy Wegner,
knew the PI employees would be working on the manipulator, saw the PI employees
working on the manipulator without fall protection, and witnessed Jones
climbing on the manipulator and then falling off a few minutes later. 
There was also some testimony, although not entirely clear, that Wegner had
seen the PI crew working on a similar manipulator without fall protection about
a month earlier.  However, this evidence goes to whether or not Ellwood
had Aactual knowledge@ of a danger and
failed to adequately warn PI=s employees.  Actual knowledge of a
danger goes to the second prong of section 95.003; it does not substitute for
evidence of Acontrol@ over the
independent contractor=s work, as the first prong of section
95.003 requires.  See Dyall, 152 S.W.3d at 705 (noting the statute
suggests that the two elements are distinct).  Thus, this evidence does
not demonstrate that Ellwood retained or exercised the requisite control over
PI and its employees.  See id. at 699 (noting a premises owner is
not liable under section 95.003 if he is aware of the danger but exercises no
control over the independent contractor).

 

Jones also argues that the testimony shows that Ellwood
hired PI to supplement its own workforce and to perform work Ellwood=s employees were
just as competent to perform.  Therefore, Jones asserts, Ellwood retained
the right to control the manner and details of PI=s work because it Asupervised@[7] the work, it had
the right to forbid PI=s work from being done in a dangerous
manner, and it had the right to require PI to comply with its rules.  By
this argument, Jones appears to suggest that, because Wegner gave PI its
assignments, observed its employees= work, and could
have done the same job with Ellwood personnel, Ellwood retained control over PI=s work. 
However, the evidence of Wegner=s Asupervision@ demonstrates only
that Wegner gave PI its assignments and observed the work the PI employees
did.  Every premises owner must have some latitude to tell its independent
contractors what to do, in general terms, and may do so without becoming
subject to liability.  Koch Refining Co., 11 S.W.3d at 156; see
also Mendez, 967 S.W.2d at 356 (AIt is not enough
that [the employer] has merely a general right . . . to inspect [the work=s] progress or to
receive reports, to make suggestions or recommendations which need not
necessarily be followed, or to prescribe alterations and deviations.@) (quoting Restatement (Second) of Torts '414, cmt.
c).  And, as discussed above, the possibility that Ellwood personnel could
have retained or exercised control over the work does not address whether they
did so on the occasion in question.  

Further, Jones=s argument is
inconsistent with the testimony concerning how the assignment to replace the
air-conditioning unit on the manipulator was given and carried out. Wegner did
testify that Ellwood employees were able to do Aall types of work@ on manipulators,
including work on the air-conditioning units; however, he also stated that
because his crew is small, Ellwood hires others to handle big jobs.  He
also agreed that he knew how to work on the manipulators and could tell others
how to do it correctly, safely, and with the right tools.  But, Billy
Matthews, Wegner=s supervisor, testified that Ellwood paid
extra for a PI supervisor and skilled workers so the work could be performed without
supervision by Ellwood personnel.  Robert Wesley, the PI supervisor,
agreed that Ellwood was paying for both labor and supervision.  When an
employer hires an independent contractor for their particular expertise and
merely observes the independent contractor=s work, that
employer does not trigger liability under section 95.003.  See Kelly v.
LIN Television of Tex., L.P., 27 S.W.3d 564, 571 (Tex. App.CEastland 2000,
pet. denied).

 

Having reviewed the record, we hold there is no evidence
that Ellwood personnel had the right to control or exercised actual control
over the operative details of PI=s work to the
extent that PI was not free to do the work its own way.  When Wegner gave
Wesley, the PI supervisor, the assignment to replace the air-conditioning unit
on the manipulator, he handed Wesley the manufacturer=s diagram of the
new air-conditioning unit and he instructed Wesley to remove the old
air-conditioning unit and replace it with another on the premises.  Wesley
testified that, once he received that assignment from Wegner, the details of
the work were left to his discretion, judgment, and control.  Wesley also
testified that if Jones wanted fall protection then Jones would have used it,
and Ellwood was not involved in his and Jones=s decision not to
do so.  Additionally, the PI employees used their own tools for most of
the work, and Ellwood personnel did not tell them what tools to use.  On
these facts, the evidence is legally insufficient to establish that Ellwood
retained or exercised actual control over PI=s work as required
to impose liability under Texas Civil Practice and remedies Code section
95.003.  See Bright, 89 S.W.3d at 608B09; Koch
Refining Co., 11 S.W.3d at 157; Mendez, 967 S.W.2d at 357B58; Phillips,
186 S.W.3d at 135B36; Dyall, 152 S.W.3d at 707.

Conclusion

In summary, that Ellwood=s maintenance
supervisor had the right to forbid PI=s employees from
working on the manipulator without fall protection, but did not stop PI=s employees from doing
so and did not require them to use proper fall protection before continuing,
does not constitute evidence that Ellwood retained or exercised control over PI=s installation of
the air conditioner on the manipulator on its premises.  Because section
95.003(1) of the Texas Civil Practice and Remedies Code requires that the
property owner exercises or retains some control over the manner in which the
work is performed before a premises owner may be found liable for the acts of
its independent contractors under Chapter 95, the Joneses cannot prevail on
their claims.

We reverse the trial court=s judgment and
render a take-nothing judgment against Bobby Jones and Kelly Jones.

 

 

/s/     
Wanda McKee Fowler

Justice

 

 

 

Judgment rendered and
Opinion filed January 9, 2007.

Panel consists of
Justices Fowler, Edelman, and Frost.














[1]  Robert Wesley is the brother of Bobby Wesley,
the owner of PI.  Bobby Wesley is also Bobby Jones=s brother-in-law.





[2]  Wegner testified that the safe work permit was
filled out before the specific jobs to be done were listed on the permit. 
Wesley, the PI supervisor, confirmed that PI and Wegner did not know exactly
what their assignments would be at the start of the week when the permit was
signed.





[3]  By deposition, Franco testified that Wegner Awould come around@
the area where they were working during the two or three days they worked on
the manipulator, but no testimony was offered concerning Wegner=s whereabouts on the day Jones fell.  Although
Wesley testified generally that Wegner knew the PI crew was on top of the
manipulator, he also testified that when Bobby Jones fell, Wegner and Franco
were the only people present.  During the defense case, Ellwood=s attorneys offered Wesley=s deposition testimony in which he stated that Wegner
was not in the area on the day Jones fell.  





[4]  Wesley testified that Bobby Jones was a skilled
worker and Andy Franco was a helper.





[5]  Specifically, Wesley testified that he did not
think he could use a harness and lanyard or a belt and lanyard because there
was no place to attach it to a structure, and he did not think he could get a
man lift in the area.  Bobby Jones testified to essentially the same
opinions.  Wesley also agreed that he could have rented any equipment
Ellwood did not have and PI would be reimbursed.





[6]  In addition to the salutary public policy of protecting
workers, we noted in Dyall two additional reasons to question the wisdom
of imposing liability upon the property owner for injuries sustained by
independent contractors.  First, the independent contractor has often been
hired for its expertise in the work to be done and its superior ability to see
that the work is done safely.  Dyall, 152 S.W.3d at 698 (citing Lee
Lewis Const., 70 S.W.3d at 796 (Hecht, J., concurring)).  Second, an
employer=s liability for accidents should
not increase the harder he tries to ensure that his independent contractors
work safely and decrease the less he cares what happens.  Id.  We further explained that the rationale of
subjecting employers to liability for injuries sustained by independent
contractors was inconsistent with our modern system of worker=s compensation.  Id. at 698B99.





[7]  In support of its contention that Wegner
supervised PI=s work, Jones points to the testimony of Andy Franco
and himself.  Franco testified that Wegner Ausually told us what to do there.@ 
When asked to describe what he was told, Franco stated, Awe were told to remove that unit and install a new
one.@  Jones testified that, while doing his work
during the week, he would see Wegner A[a]ll
day, every day@ and he described how Wegner wanted pallet pushers
built a certain way, telling him Awhere
the material was to build it@ and Awhat kind of welding rods to use.@  When asked to describe Wegner=s personality, Jones testified that AHe wants to make sure everybody knows he=s in control.  He=s a nice guy, but he wants you to know that he=s the one calling the shots.@  He also testified that Wegner would inspect
their work daily, and Aif he didn=t
like it, he would tell you about it.@