The DOW CHEMICAL COMPANY and
the Dow Chemical Company d/b/a En-
gineering and Construction Services,
A Division of Dow Chemical, USA,
Petitioners,

v.

Larry BRIGHT, Jr., Respondent.

No. 99–0929.

Supreme Court of Texas.

Argued April 24, 2002.

Decided Oct. 17, 2002.

Rehearing Denied Dec. 19, 2002.

Scott K. Field, Joseph R. Knight, Bob E. Shannon, Gavin Robert Villareal, Baker Botts, LLP, Austin, Randy Edward Moore, The Moore Law Firm, Lake Jackson, for The Dow Chemical Company.

Matthew J.M. Prebeg, James B. Lewis, Glover, Miller, Lewis & Prebeg, Peter M. Kelly, Kelly Jeremiah & Feder LLP, Houston, for Larry Bright, Jr.

Justice RODRIGUEZ delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice ENOCH, Justice OWEN, and Justice JEFFERSON join.

Dow Chemical Company retained Gulf States, Inc. as an independent contractor to perform construction work. Gulf States employed Larry Bright as a carpenter. Bright suffered an on-the-job injury and sued Dow, alleging it was negligent and had a duty to use reasonable care to keep the premises under its control in a safe condition. Bright filed a motion for partial summary judgment on the issue of duty, arguing that Dow retained both contractual and actual control of the premises when he was injured. Dow filed a "traditional" motion for summary judgment contending that it owed Bright no duty. The trial court granted Dow's motion, denied Bright's motion, and rendered judgment that Bright take nothing. The court of appeals reversed and remanded, concluding that the summary judgment evidence raised a fact issue about the extent of "supervisory control" retained by Dow. 1 S.W.3d 787. We conclude that no fact issues exist about the extent of contractual or actual control retained by Dow. Accordingly, we reverse the court of appeals' judgment and render judgment that Bright take nothing.

## I. Facts

Gulf States employed Larry Bright as a carpenter. Gulf States was an independent contractor retained by Dow in the construction of an off-gas compressor in Freeport, Texas. While Bright was removing plywood forms from a concrete pier, an overhead pipe became unstable and fell on him, trapping his arm and causing his injury. The pipe was put into place and improperly secured by another Gulf States employee. Citing *Redinger v.*

*Living, Inc.,* 689 S.W.2d 415 (Tex.1985) and the *Restatement (Second) of Torts* section 414, Bright filed a motion for partial summary judgment arguing that Dow retained contractual and actual control of the premises and thus it had a duty to use reasonable care to keep the premises in a safe condition. Dow filed a "traditional" motion for summary judgment arguing that Gulf States was an independent contractor and that Dow was not obligated to protect Gulf States' employees from hazards that are incidental to or part of the work Gulf States was retained to perform. The trial court granted Dow's motion for summary judgment, denied Bright's motion, and rendered judgment that Bright take nothing. The court of appeals reversed and remanded, concluding that the summary judgment evidence raised a fact issue about the extent of supervisory control retained by Dow, and therefore a fact issue about the existence of a duty owed by Dow to Bright. 1 S.W.3d at 791.

■ Dow filed a petition for review, asking us to decide whether Dow owed Bright a "broad duty to exercise reasonable care" and whether the court of appeals erred in interpreting this Court's decision in *Hoechst–Celanese Corp. v. Mendez,* 967 S.W.2d 354 (Tex.1998). When both sides have moved for summary judgment and one motion is granted and one denied, we determine all questions presented and render the judgment the trial court should have rendered. *See City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex.2000).

## II. Analysis

■ Whether Dow owed Bright a duty is governed by our law concerning a general contractor's duties to a subcontractor's employees. *Koch Ref. Co. v. Chapa,* 11 S.W.3d 153, 155 n. 1 (Tex.1999) ("A general contractor owes the same duty as a prem-

ises owner to an independent contractor's employee."). In that context, there are two categories of premises defect cases: (1) defects existing on the premises when the independent contractor entered; and (2) defects the independent contractor created by its work activity. *Coastal Marine Serv. of Tex., Inc. v. Lawrence,* 988 S.W.2d 223, 225 (Tex.1999). Bright argues that Dow is subject to liability under the second category—when the dangerous condition arises because of the independent contractor's work activity.

■ Under this second category, the premises owner generally owes no duty to the independent contractor's employees. In *Redinger,* we recognized that the "general rule is that an owner or occupier does not have a duty to see that an independent contractor performs work in a safe manner.... However, when the general contractor exercises some control over a subcontractor's work he may be liable unless he exercises reasonable care in supervising the subcontractor's activity." *Redinger,* 689 S.W.2d at 418. For liability to attach, "[t]he employer's role must be more than a general right to order the work to start or stop, to inspect progress or receive reports." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965)).

■ A party can prove right to control in two ways: first, by evidence of a contractual agreement that explicitly assigns the premises owner a right to control; and second, in the absence of a contractual agreement, by evidence that the premises owner actually exercised control over the manner in which the independent contractor's work was performed. *Koch,* 11 S.W.3d at 155. Bright raises both arguments in this case. We first determine whether Dow exercised contractual control of the premises.

## A. Contractual right to control

■ A contract may impose control upon a party thereby creating a duty of care. *Elliott–Williams Co. v. Diaz,* 9 S.W.3d 801, 804 (Tex.1999). "If the right of control over work details has a contractual basis, the circumstance that no actual control was exercised will not absolve the general contractor of liability." *Id.* "It is the [contractual] right of control, and not the actual exercise of control, which gives rise to a duty to see that an independent contractor performs work in a safe manner." *Id.* "For a general contractor to be liable for its independent contractor's acts, it must have the right to control the means, methods, or details of the independent contractor's work. Further, the control must relate to the injury the negligence causes, and the contract must grant the contractor at least the power to direct the order in which work is to be done." *Id.* (citations omitted). Determining whether a contract gives a right of control is generally a question of law for the court rather than a question of fact for the jury. *Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 783 (Tex.2001).

The Construction Contract between Dow and Gulf States provides:

> 22.01. Safety—... CONTRACTOR shall take all necessary precautions for the safety of the employees on the work and shall comply with all safety rules and regulations of DOW as set forth in the Safety and Loss Prevention Manual for CONTRACTORS and all applicable provisions of the federal, state and municipal safety laws and building codes to prevent accidents or injuries to persons or damage to property on or about or adjacent to the premises where work is being performed.
>
> ....
>
> 30.01. Responsibilities—CONTRACTOR shall be an independent contractor

under this Contract and shall assume all of the rights, obligations and liabilities, applicable to it as such independent contractor hereunder and any provisions in this Contract which may appear to give DOW the right to direct CONTRACTOR as to details of doing the work herein covered or to exercise a measure of control over the work shall be deemed to mean that CONTRACTOR shall follow the desires of DOW in the results of the work only.

■ Bright argues that Dow had a contractual right to control the premises because Dow required its independent contractors to comply with the safety rules and regulations promulgated by Dow in its Safety and Loss Prevention Manual. Dow argues that section 30.01 of the Construction Contract specifically provides that Gulf States shall be an independent contractor and that Gulf States retains the right to control its work, and that accordingly Dow retained no contractual control.

This agreement does not impose upon Dow any duty of care to Bright. The agreement does not delegate to Dow the right to control the means, methods, or details of Gulf States' work, nor does it grant Dow the power to direct the order in which Gulf States' work should be done. Indeed, paragraph 30.01 specifically provides that Gulf States is an independent contractor and assumes all liabilities as such. Further, paragraph 30.01 provides that any other provisions in the contract, such as paragraph 22.01, shall be deemed to mean that Gulf States would follow Dow's desires in the results of the work only.

We conclude, as a matter of law, that the agreement does not impose a duty on Dow because Dow did not retain the right to control the means, methods, or details of Bright's work. *Elliott–Williams,* 9 S.W.3d at 804.

## B. Actual exercise of control

■ A premises owner who actually exercises control over the contractor's work may be subject to direct liability for negligence. *Koch,* 11 S.W.3d at 155. However, "merely exercising or retaining a general right to recommend a safe manner for the independent contractor's employees to perform their work is not enough to subject a premises owner to liability." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965)). In addition, "the control must relate to the injury the negligence causes." *Elliott–Williams,* 9 S.W.3d at 804. Furthermore, if a premises owner exercises control by requiring a subcontractor to comply with its safety regulations, the premises owner owes the subcontractor's employees a narrow duty of care that its safety requirements and procedures do not unreasonably increase the probability and severity of injury. *Hoechst–Celanese,* 967 S.W.2d at 358; *Traylor Bros., Inc. v. Garcia,* 49 S.W.3d 430, 435 (Tex.App.-San Antonio 2001, pet. denied).

■ As stated above, Bright was injured when a pipe placed by a fellow Gulf States employee fell and trapped his arm. The following undisputed evidence was established by Dow: Gulf States assigned Bright his carpenter duties; Dow did not instruct Bright on how to perform his job; Dow was not involved in the decision as to how or when to secure the pipe that fell on Bright.

■ In support of his argument that Dow retained actual control, Bright relies first upon the fact that Dow could have stopped Bright's work had it known of the safety hazard. However, as the *Restatement (Second) of Torts* states, it is not enough that the premises owner has merely a general right to order the work

stopped. RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965). To hold otherwise would deter general contractors from setting even minimal safety standards. *See Hoechst–Celanese*, 967 S.W.2d at 358. As we stated in *Hoechst–Celanese*, " '[w]e do not believe that a general contractor or an employer is required to stand idly by while another is injured or killed in order to avoid liability. Nor do we believe that the liability rules contemplate putting those who employ independent contractors in that position.' " *Id.* (quoting *Welch v. McDougal*, 876 S.W.2d 218, 224 (Tex.App.-Amarillo 1994, writ denied)).

■ Second, Bright contends that Dow's representative should have refused to issue a safe work permit. Dow's policies required its safety representative to conduct an on-site inspection and pre-job safety conference with Gulf States' safety representative before allowing Gulf States' employees to work in their area. Bright argues that Dow's representative should have thoroughly inspected Gulf States' work area prior to issuing the safe work permit. Bright argues that, had an on-site inspection been properly performed, Dow's safety representative could have detected that the pipe placed by Bright's fellow Gulf States' employee was not adequately secured.

We rejected a similar argument in *Koch Refining Co. v. Chapa*. The injured employee in *Koch* argued that a duty was established based on the presence of a Koch safety representative and the possibility that he might intervene and forbid the employee from lifting a pipe in a dangerous manner. In addition, the employee in *Koch* argued that Koch owed a duty because Koch safety representatives had allegedly instructed the independent contractor's employees in the past to perform their work in a safer manner. However, we concluded that such testimony was not evidence that Koch exercised the degree of control necessary to create a duty. We held that "Koch at most owed [the independent contractor's] employees 'a duty that any safety requirements and procedures it promulgated did not unreasonably increase, rather than decrease, the probability and severity of injury.' " *Koch*, 11 S.W.3d at 156 (quoting *Hoechst–Celanese*, 967 S.W.2d at 358). Further, we stated in *Koch* that the mere fact that a Koch safety employee was present to tell its independent contractor's employees if they were doing "something wrong" and to remind them to do the job in a safe manner was insufficient to establish actual control. *Koch*, 11 S.W.3d at 156. We stated that the above is not evidence that the independent contractor and its employee were not free to do their work in their own way and is not evidence that Koch controlled the method of work or its operative details. *Id.*

In this case, Gulf States and Dow both had safety representatives at the work site. Gulf States knew, because of its acceptance of the Construction Contract, that it was responsible for Bright's safety and the safety of other Gulf States' employees. Accordingly, any argument that the presence of the Dow safety representative caused Bright and Gulf States to lower their safety consciousness is misplaced. Further, Dow's safe work permit system does not alter our analysis. The fact that Dow implemented a safe work permit system as an attempt at creating a safer construction site did not unreasonably increase the probability and severity of Bright's injury. In addition, as in *Koch*, this does not serve as evidence that Gulf States and Bright were not free to do the work in their own way and is not evidence that Dow controlled the method of work or its operative details. The *Restatement (Second) of Torts* states that it is not

enough that the premises owner has merely a general right to order the work stopped (after work has commenced). RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965). Likewise, Dow's general right under the safe work permit system to preclude work from beginning in the first instance is insufficient to establish actual control.

This Court has recognized that a general contractor has actually exercised control of a premises when the general contractor knew of a dangerous condition before an injury occurred and approved acts that were dangerous and unsafe. *See Lee Lewis Constr.*, 70 S.W.3d at 784 ("Testimony indicated that C.L. Lewis personally witnessed and approved of the specific fall-protections systems KK Glass used. There was testimony that C.L. Lewis 'definitely did approve' the lanyard system. There was also testimony that C.L. Lewis knew of and did not object to KK Glass employees using a bosun's chair without an independent lifeline."); *see also Hoechst–Celanese*, 967 S.W.2d at 358 ("[A]n employer who is aware that its contractor routinely ignores applicable federal guidelines and standard company policies related to safety may owe a duty to require corrective measures to be taken or to cancel the contract."). Had the Dow safety representative actually approved how the pipe in question was secured or instructed Bright to perform his work knowing of the dangerous condition, we could have a fact scenario mirroring *Lee Lewis*. However, we have never concluded that a general contractor actually exercised control of a premises where, as here, there was no prior knowledge of a dangerous condition and no specific approval of any dangerous act.

■ Alternatively, Bright argues that Dow should have issued an additional safety rule detailing how the ends of pipes should be secured before allowing workers in an area. Dow's failure to implement such a safety rule is not actual control. Bright's argument fails to implicate the narrow duty of care not to promulgate safety regulations that unreasonably increase the risk or severity of injury.

■ Furthermore, Bright argues that Dow required contractors to report the name of any employee fired for a safety infraction; Dow required Gulf States to send its employees to a third-party safety meeting; and Dow had a Safety Incentive Program that rewarded contractors who had achieved certain safety milestones. These requirements do not implicate the narrow duty of care not to promulgate safety regulations that increase the risk or severity of injury, nor do they relate to Bright's injury.

■ Bright further contends that Dow exercised actual control by retaining authority over the timing and sequence of work being done by the various independent contractors. The evidence in this case, however, establishes that Gulf States controlled the work performed by the pipefitter who placed the pipe that fell on Bright. As stated above, Gulf States was solely responsible for controlling the work performed by Bright. There is no evidence in the record that Dow was involved in any manner with controlling the timing and sequence of Bright's work and deciding which Gulf States employees should perform what task and at what point in time. Bright did present evidence that the timing and sequence of Gulf States' work was indicated on a job efficiency matrix prepared and submitted by Gulf States and that, should the need arise, Dow and Gulf States could mutually agree to a modification. This is not evidence, however, that Dow controlled the timing and sequence of the erection of the pipe and Bright's carpentry work in the area. *See*

*Good v. Dow Chem. Co.*, 945 S.W.2d 877, 882 (Tex.App.-Houston [1st Dist.] 1997, no writ) ("Good points to no safety manual provision that dictates how and when pipe shoes should be welded to the pipe, or how and when the pipe should be placed on the racks.").

Finally, Bright argues that Dow issued various safety manuals and standards that Gulf States' employees were required to read and follow. Bright argued in his response to Dow's motion for summary judgment that the issuance of these safety regulations and the expectation that they be followed establishes "actual control" of the premises. Dow argues that at most it owed a duty that any safety requirements and procedures it promulgated did not unreasonably increase, rather than decrease, the probability and severity of injury.

The procedural history regarding this point requires clarification. In Bright's first amended original petition, Bright alleged that Dow was negligent and cited eleven specific negligent acts.[1] Bright never alleged in either his petition or his summary judgment pleadings that Dow's promulgated safety requirements and procedures unreasonably increased the probability and severity of injury to Bright.

In Dow's motion for summary judgment, Dow argued that it did not exercise actual control over Gulf States' or Bright's work. In support of its motion, Dow attached the affidavit of a Gulf States' Field Safety Representative, which stated, in part, the following:

> I was ... responsible for seeing to it that all Gulf States' employees working at the work site where Larry Bright, Jr. was injured complied with both Gulf States' and Dow Chemical's safety rules and requirements.
>
> . . . .
>
> During the job on which Mr. Bright was injured, The Dow Chemical Company *did not retain and had no right to direct or control* Gulf States or its employees with regard to safety or safety related issues arising out of the performance of Gulf States['] or its employees' work. Further, neither The Dow Chemical Company, nor any of its employees, exercised control or directed any of the details of my work, nor any of the employees' work whom I directly supervise. Additionally, neither The Dow Chemical Company nor its employees had the right to intervene nor did they intervene in any safety related matters during the construction of the off-gas compressor, the project which Mr. Bright was working on when he was injured.

In response to Dow's motion for summary judgment, Bright filed excerpts from the deposition of a former Dow safety manager. He testified that Dow had safety standards for numerous areas, such as overhead hoist safety, fall restraint sys-

---

1. "1. *Permitting the maintenance of an improperly secured platform;* 2. In failing to have adequate policies or provisions pertaining to the safe erection, construction and maintenance of work platforms; 3. In failing *to ascertain that Defendants' employees* conducted adequate inspection of the premises to make timely discovery of dangerous conditions thereon; 4. In failing to keep the premises in a safe condition for business invitees; 5. *In failing to warn Plaintiff and other employees/invitees of the defective condition of* the platform after Defendant knew or should have known of such defective condition; 6. In failing to adequately train its employees; 7. In failing to adequately train its management personnel; 8. In failing to adequately manage, direct, and/or supervise its employees; 9. In failing to adequately manage, direct, and/or supervise its management personnel; 10. In failing to adequately manage, direct, and supervise its contractor personnel; 11. In failing to instruct Gulf States Utilities to repair the improperly secured platform."

tems, mobile hoisting, personnel safety, hot work safety, and pressure vessel safety standards. Bright's counsel questioned the former Dow safety manager whether these were "must comply" standards. The former Dow safety manager answered: "Not all of them."

In Bright's motion for partial summary judgment, Bright argued that Dow had both a contractual and an actual right of control. With regard to his actual control argument and Dow's safety policies, Bright argued that Dow "issued a Texas Operations safety standard defining the minimum safeguards that Dow required of each operation.... Dow expected its contractors, including Larry Bright's employer, to abide by the safety rules that Dow issued." Bright further argued that all contract employees were required to "be indoctrinated with the Dow safety rules book." Finally, Bright concluded with the statement that "[b]ecause Dow provided safety procedure manuals for all its contractors and contractors' employees, Dow exercised control sufficient to give rise to the duty of care owed to Larry Bright." Thus, Bright relied entirely on the mere existence of the safety regulations to establish actual control. But as we have stated, mere promulgation of safety policies does not establish actual control. *Hoechst–Celanese,* 967 S.W.2d at 357–58 (requiring an independent contractor to "observe and promote compliance with federal laws, general safety guidelines, and other standard safety precautions [does] not impose an unqualified duty of care on [a premises owner] to ensure that [an independent contractor's] employees [do] nothing unsafe"); *Koch,* 11 S.W.3d at 156. Because Bright never asserted at any time during the proceedings in the trial court that Dow's promulgated safety requirements and procedures unreasonably increased the probability and severity of injury to Bright, it was not necessary for

Dow to negate this allegation to be entitled to summary judgment.

## III.   Conclusion

No fact issues exist about the extent of contractual or actual control retained by Dow. Accordingly, we reverse the court of appeals' judgment and render judgment that Bright take nothing.

Justice HANKINSON and Justice O'NEILL concurred in the judgment only.

Justice SCHNEIDER did not participate in the decision.