ACCEPTED
04-14-00622-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
12/30/2014 4:37:57 PM
KEITH HOTTLE
CLERK

No. 04-14-00622-CV

_____

IN THE FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
12/30/2014 4:37:57 PM
KEITH E. HOTTLE
Clerk

_____

**MARISELA G. SALAS**, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF MARTIN SUAREZ AND A/N/F OF KEYLA MARIZEL SUAREZ, MARTIN SUAREZ GUERRERO AND SILVIA MARTINEZ,

APPELLANT

V.

ALLEN KELLER CO. I, LLC D/B/A **ALLEN KELLER CO.**,

APPELLEE

_____

On Appeal from the 216th Judicial District Court of
Gillespie County, Texas

_____

### APPELLEE'S BRIEF

_____

Erik R. Wollam
State Bar No. 00788705
Ellen Gerson Tagtmeier
State Bar No. 07827700
LUCERO | WOLLAM, P.L.L.C.
13590 Ranch Road 12
Wimberley, Texas 78676
Telephone: (512) 485-3500
Facsimile: (512) 485-3501
ewollam@lucerowollam.com
etagtmeier@lucerowollam.com

# TABLE OF CONTENTS

Page No.

ABBREVIATIONS ................................................................................. iii

INDEX OF AUTHORITIES .....................................................................iv

STATEMENT OF THE CASE ..................................................................vi

ISSUE PRESENTED ............................................................................. vii

STATEMENT OF FACTS .........................................................................1

SUMMARY OF THE ARGUMENT ..........................................................2

ARGUMENT AND AUTHORITIES...........................................................3

    I.       Standard of Review in the Trial Court - Traditional Motion for
          Summary Judgment ...................................................................3

    II.     Standard of Review on Appeal- Traditional Motion for Summary
        Judgment .....................................................................................4

    III.   The Summary Judgment Evidence did not Raise a Genuine Issue of
        Material Fact Regarding Whether Allen Keller Co. Retained
        Sufficient Control Over the Work Being Performed by Martin
        Suarez When he was Injured Such That Allen Keller Co. is Liable
        to Martin Suarez for Negligence ………………………………… 5

        A.    Subcontract Agreement - C&B White's Scope of
            Work ……………………………………….…………… 5

        B.    TxDoT Drawings and Plans Controlled C&B's Work ……..… 6

        C.    AK Never Controlled C&B's Work to Put Traffic Control
            Signs in the Pickup and Move the Signs to the Locations
            Where They Were to be Placed ……………………………… 7

            1.     The Day of the Accident ……………………………… 9

D.    AK Owed no Duty to Suarez ………………….……… 12

        1.    General rule - Since C&B was an independent contractor, AK had no duty to make sure That C&B safely performed its work …………………….……… 12

        2.    Exception to general rule   ………..……………. 13

            a.    AK had no actual knowledge of the danger or condition that led to Suarez's death  …………. 13

            b.    AK did not exercise sufficient control over Suarez's work when he was injured ……………14

IV.    Appellant's Argument Based on Chapter 95 of the Texas Civil Practice and Remedies Code is Moot ..………………………..15

V.    Excerpts from the Texas Manual on Uniform Traffic Control Devices at Tab 3 of the Appendix to Appellant's Brief are not Part of the Summary Judgment Record and Can't be Considered in this Appeal ....................................................................16

VI.    Plaintiff Failed to Timely Perfect this Appeal ...................................17

CONCLUSION AND PRAYER .........................................................................17

CERTIFICATE OF COMPLIANCE..................................................................18

CERTIFICATE OF SERVICE ..........................................................................19

APPENDIX ........................................................................................................20

# ABBREVIATIONS

CR = Clerk's Record

SCR –Supplemental Clerk's Record

RR = Reporter's Record

# INDEX OF AUTHORITIES

Page No.

Cases

*Anderson v. Snider*,
808 S.W.2d 54 (Tex. 1991)…………………………...…………3

*City of Houston v. Clear Creek Basin Auth.*,
589 S.W.2d 671 (Tex. 1979)...………………………………….4

*Compton v. Calabria*,
811 S.W. 2d 945 (Tex. App.–Dallas 1991, no writ)…...……………4

*Dow Chemical Co. v. Bright*,
89 S.W.3d 602 (Tex. 2002).……………………………...……13

*General Electric v. Moritz*,
257 S.W.3d 211 (Tex. 2008).……………………………………12

*Gibbs v. General Motors*,
450 S.W.2d 827 (Tex. 1970).………………………...…………5

*Hoechst-Celanese v. Mendez*,
967 S.W.2d 354 (Tex. 1998).…………………………...……… 12, 15

*K-Six Television, Inc. v. Santiago*,
75 S.W.3d 91 (Tex. App.—San Antonio 2002, no pet.) …...………16

*Lear Siegler, Inc. v. Perez*,
819 S.W.2d 470 (Tex. 1991) ……………………………………... 4, 5

*Long v. State Farm Fire & Cas. Co.*,
828 S.W.2d 125 (Tex. App.–Houston [1st Dist.] 1992, writ denied). ………4

*Marathan Corp. v. Pitzner,*
55 S.W.3d 114 (Tex. App—Corpus Christi 2001), *rev'd on other grounds,*
106 S.W.3d 724 (Tex. 2003). ………………………………...…12

iv

*Nixon v. Mr. Property Management Co.*,
   690 S.W.2d 546 (Tex. 1985). …………………………………..…… 3, 4

*Shell Oil v. Khan*,
   138 S.W.3d 288 (Tex. 2004). ………………………………...……14

*Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*,
   644 S.W.2d 443 (Tex. 1982). …………………………………….……3

*Valence Operating Co. v. Dorsett*,
   164 S.W.3d 656 (Tex. 2005).…………………………………....…4

# STATEMENT OF THE CASE

*Nature of Case:*   This case arises out of a negligence claim made by estate beneficiaries against Allen Keller Co. (a general contractor for a TxDOT roadway project near Blanco, Texas) based on personal injuries on a job site leading to the death of Martin Suarez.

*Parties*:   Martin Suarez was an employee of C&B White Services, Inc., a subcontractor (independent contractor) to Allen Keller Co. (as general contractor ) on a TxDoT job near Blanco, Texas. Plaintiff sued as the representative of the Estate of Martin Suarez, deceased.

*Proceedings*:   Plaintiff filed an Original Petition and a First Amended Original Petition. CR 5-106, 150-158. Allen Keller Co. filed an Original Answer and a First Amended Answer. CR 107-109, 126-128. Allen Keller Co. file a Traditional Motion for Summary Judgment as to Plaintiff's negligence claim. CR 136-230. Plaintiff filed a Response to the Traditional Motion for Summary Judgment. CR 231-277. Allen Keller Co. filed a Reply to Plaintiff's Response to the Traditional Motion for Summary Judgment. CR 278-281.

*Disposition*:   The Court granted the Traditional Motion for Summary Judgment and entered a Summary Judgment. CR 304-307. Plaintiffs filed a Motion for New Trial [not included in the Clerk's Record by Appellant]. The Motion for New Trial was overruled by operation of law on August 25, 2014. Tex.R.Civ.P. 329b(c).

*Notice of Appeal*:   On July 11, 2014, Plaintiffs file a Notice of Appeal. CR 310-315.

*Record on Appeal*:   The record on appeal consists of one volume of the Clerk's Record (CR 1-322), one volume of the Reporter's Record (RR 1-40) and one volume of the Supplemental Clerk's Record (SCR 1-27).

**ISSUE PRESENTED:**

The Summary Judgment Evidence did not Raise a Genuine Issue of Material Fact Regarding Whether Allen Keller Co. Retained Sufficient Control Over the Work Being Performed by Martin Suarez When he was Injured Such That Allen Keller Co. is Liable to Suarez for Negligence.

**STATEMENT OF FACTS**

In July 2012, Martin Suarez ("Suarez's) was employed by C&B White Services, Inc. ("C&B") as part of a concrete crew near Blanco, Texas. CR 208 (Castillo Depo. 14/5-10); CR 211 (Castillo Depo. 28/2-4). C&B was an independent contractor of Allen Keller Co. ("AK") under a contract to provide concrete work around and under the guardrails of the roadway. CR 164 (White Depo 6/23 - 7/24). Sometime after C&B began to perform work for AK in or about November 2011, C&B agreed that it would also perform traffic control, consisting of moving and placing construction zone warning signs and cones for its scope of work. CR 159-160 (Affidavit of Kory Keller at ¶ 2); CR 166 (White Depo. 15/8-18).

By July 11, 2012, C&B's crew had been doing traffic control on this job for about a month. That morning, as the C&B crew began the process of setting out construction warning signs, Suarez and another crew member decided for the first time ever to ride straddling the tailgate of C&B's pickup (with one foot each inside the bed of the truck and one foot on the outside bumper) which was carrying the road signs. CR 212 (Castillo Depo. 29/14-30/1, 30/18-31/10). As the C&B truck began to move, a road sign was blown out of the bed of the truck, knocking Suarez and the other crew member who was straddling the tailgate to the roadway. CR 212

1

(Castillo Depo. 32/15-22). Suarez suffered a severe head injury which led to his death later that day. CR 223 (Castillo Depo. 76/1-4).

Plaintiff, as the representative of Suarez's estate, sued C&B (Suarez'ss employer) and AK (the general contractor) for negligence, asserting that AK retained sufficient control over the details of Suarez'ss that AK is liable in negligence to Suarez for his death. CR 150-158. AK filed a Traditional Motion for Summary Judgment on the grounds that AK did not exercise sufficient control over the work being done by Suarez at the time when he was injured and cannot be held liable for his death. CR 136 - 230. The Trial Court granted AK's Traditional Motion for Summary Judgment. (CR 304-307).

## SUMMARY OF THE ARGUMENT

Suarez was employed by C&B, an independent subcontractor to AK, the general contractor. AK, as a general contractor, owed no duty to ensure the subcontractor and/or its employees worked safely. The entirety of Plaintiff's summary judgment evidence was devoted to proving an exception to this rule: namely, that AK exercised actual control over "the work." Plaintiff's summary judgment evidence, however, missed the mark and failed to raise a fact issue linking AK's alleged control and the activity that actually caused Suarez's injuries and death. The cause of Suarez's unfortunate accident was his decision to ride straddling the tailgate of his employer's truck as the crew moved traffic control

2

signs. AK's summary judgment evidence conclusively proved that AK was never involved in any way with the manner in which the C&B White crew moved signs around and Plaintiff introduced no summary judgment evidence to the contrary. Plaintiff also failed to introduce any summary judgment evidence that AK had actual knowledge of the danger or condition resulting in Suarez's injury and death which is also part of the exception to the general rule; whereas AK's summary judgment evidence conclusively proved that AK had no such knowledge. AK's summary judgment evidence proved that AK owed no duty to Suarez and could not be liable to him in negligence. The Trial Court properly entered a traditional summary judgment in favor of AK.

## ARGUMENT AND AUTHORITIES

### I. Standard of Review in the Trial Court - Traditional Motion for Summary Judgment

Summary judgment is proper whenever a defendant's summary judgment proof conclusively disproves at least one element of each cause of action alleged by the Plaintiff. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991); *see also Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-549 (Tex. 1985). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982).

3

Once the movant has established a right to summary judgment, the burden shifts to the non-movant, who must then respond to the motion and present any issues to the court which should preclude summary judgment. *Long v. State Farm Fire & Cas. Co.*, 828 S.W.2d 125, 127 (Tex. App.–Houston [1st Dist.] 1992, writ denied); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). If a defendant is able to disprove at least one element of Plaintiff's cause of action, the defendant's summary judgment should be granted. *Compton v. Calabria*, 811 S.W. 2d 945, 949 (Tex. App.–Dallas 1991, no writ).

AK conclusively disproved at least one element of Plaintiff's negligence claim – that of duty – and thus, summary judgment for AK was proper.

## II. Standard of Review on Appeal - Traditional Motion for Summary Judgment

The standard of review on appeal for the granting by the Trial Court of a traditional summary judgment is a review de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The appellate court reviews the evidence in a summary judgment case in a light most favorable to the nonmovant appellant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). The appellate court must determine whether the successful movant at the trial level carried its burden of showing that there was no genuine issue of material fact and that a judgment should have been granted as a matter of law. *Lear Siegler, Inc. v.*

4

*Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Nixon,* 690 S.W.2d at 548. Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. General Motors*, 450 S.W.2d 827, 828 (Tex. 1970).

**III. The Summary Judgment Evidence did not Raise a Genuine Issue of Material Fact Regarding Whether Allen Keller Co. Retained Sufficient Control Over the Work Being Performed by Martin Suarez When he was Injured Such That Allen Keller Co. is Liable to Martin Suarez for Negligence**

**A. Subcontract Agreement - C&B White's Scope of Work**

In November, 2011, C&B entered into a written subcontract agreement with AK in connection with the completion of a road construction project. CR 191-201 (Construction Subcontract); CR 165 (White Depo. 11/4-11, 11/20-12/8). Part of that project was on Highway 1623 in Blanco County, Texas. CR 165 (11/4-12/8); CR 191-202 (White Depo. Exs. 5 and 6). C&B White's specific scope of work on Highway 1623 was to pour concrete in the "mow strips"—areas under the guardrails that are paved to eliminate the need for weed-eating. CR 164 (White Depo. 7/14-24). Since the project was on a public roadway, the Texas Department of Transportation ("TxDOT") was the Owner of the project. CR 159 (Affidavit of Kory Keller at ¶ 1).

5

According to C&B's subcontract with AK, C&B was obligated to supply its own, labor, tools and materials. CR 160 (Affidavit of Kory Keller at ¶3); CR 191-192 (Construction Subcontract at ¶1). C&B was also required to procure its own commercial general liability insurance, automobile insurance and workers' compensation insurance. CR 160 (Affidavit of Kory Keller at ¶3); CR 193 - 194 (Construction Subcontract at ¶¶ 13(1)-(4)). Further, C&B promised to take reasonably necessary safety precautions and follow AK's safety policy. CR 160 (Affidavit of Kory Keller at ¶4); CR 195 (Construction Subcontract at ¶20).

Initially, AK was to provide traffic control, but at some point in time between November 2011 and July 2012, C&B agreed to take over traffic control as part of its scope of work. CR 159-160 (Affidavit of Kory Keller at ¶ 2); CR 166 (White Depo. 15/8-18). C&B established a daily fee for the traffic control work and billed AK. CR 166 (White Depo. 15/24-16/15). No separate written contract or formal addendum was executed for this traffic control work. When a disagreement arose over C&B's bill to AK, AK agreed to throw some materials into the bargain. CR 175-176 (White Depo. 52/25-53/24).

**B.    TxDoT Drawings and Plans Controlled C&B's Work**

C&B's concrete work was guided by construction/engineering drawings from TxDOT showing C&B where to place concrete aprons underneath barricades. CR 166-167 (White Depo. 16/16-17/7). Likewise, when C&B began traffic

6

control work, C&B received through AK a written traffic control plan prepared by TxDOT roadway engineers. CR 159-160 (Affidavit of Kory Keller at ¶2); CR 167 (White Depo. 17/8-18/6). C&B followed the guidelines from TxDOT in placing the traffic control signs and cones. CR 167 (White Depo. 17/8-18/6). Other than an AK employee helping to set out traffic control cones on C&B's first day of traffic control work, the TxDOT binder was the source of C&B's instruction on how to set out traffic control signs and cones. CR 169 (White Depo. 25/22-26/22).

**C.     AK Never Controlled C&B's Work to Put Traffic Control Signs in the Pickup and Move the Signs to the Locations Where They Were to be Placed**

No AK personnel was actively involved in the process of picking up or laying down traffic control signs other than to confirm that the signs were taken down from the roadway at the end of each day. CR 168 (White Depo. 24/4-13). On a day-to-day basis, the C&B crew controlled picking up the signs, putting them in a C&B pickup truck and getting them to the location where they needed to be placed on the roadway. CR 171 (White Depo. 34/22 -35/2). No one at AK gave the C&B crew, including Suarez, oral or written instructions on how to place the signs in the bed of the truck. Further, no one at AK instructed the crew, including Suarez, where they should ride in the truck while placing traffic control signs on the roadway. CR 171 (White Depo. 35/3 - 36/10). AK never controlled how the C&B crew placed the traffic control signs into the C&B truck or where C&B crew

7

should ride in the truck while putting the signs out. CR 171 (White Depo. 35/3-25; 36/5-10); CR 215-216 (Castillo Depo. 44/19- 45/3).

At no time during C&B's work on this project did anyone from AK ask anyone from C&B to move a traffic control sign that C&B employees had placed on the roadway. CR 224-225, 228 (Castillo Depo. 80/9-12, 81/20-23, 95/7-15). Casey White ("White"), President of C&B, had filled out a safety program checklist for this job when C&B subcontracted with AK. CR 200 (Construction Subcontract at p. 10). White also specifically instructed his crew, including Roberto Moreno Castillo ("Castillo"), the crew foreman, that nobody was to ride in the back of vehicles or hang on the sides of the truck while doing this work. CR 172 (White Depo. 37/6-39/9). White made daily inspections of the jobsite and never saw any of his crew members riding in the bed of a pickup truck or straddling the tailgate of a pickup truck. CR 172 (White Depo. 40/7-21).

It was a TxDOT mandate that required signs to be taken down every night and replaced in the morning. CR 168 (White Depo. 22/14-20). Although the signs and cones belonged to AK, C&B provided the vehicle to move the signs and all other tools and safety equipment for its crew. CR 160 (Affidavit of Kory Keller at ¶¶ 3 and 4).

A TxDOT inspector was frequently on the job to check C&B's concrete work and traffic control. CR 167 (White Depo. 18/19-25; 19/15-24). On two

8

occasions, TxDOT took issue with C&B's spacing of traffic control cones and C&B received calls from TxDOT and/or AK regarding TxDOT's concerns. C&B corrected cone spacing to comply with TxDoT instructions. CR 167-168 (White Depo. 19/25-20/25; 24/14-25).

The task of traffic control was not complex and after the first day, the C&B crew handled it with no input from AK, other than the two calls regarding the spacing of traffic cones (not signs) which originated with TxDOT. CR 169 (White Depo. 26/10-27/2). Neither TxDOT nor AK criticized the manner in which the C&B crew loaded or moved the traffic control signs. CR 168-169 (White Depo. 22/4-13; 25/15-21).

## 1.    The Day of the Accident

In keeping with the TxDOT mandate to put up and take down the traffic control signs daily, the C&B crew would put out warning signs at the beginning of the work day. CR 208 (Castillo Depo. 16/4-7). At the time of the accident, the crew had been putting out and picking up the same three signs every day for about a month. CR 208-209 (Castillo Depo. 15/16-22, 19/24- 20/6, 20-22). The C&B crew was headed up by C&B employee Castillo and, on the day of the accident, the crew included Suarez and three others. CR 208 (Castillo Depo. 14/5-10); CR 211 (Castillo Depo. 28/2-4).

On the morning of the accident, the C&B crew picked up the signs from a work area and stacked them flat in the bed of Castillo's truck. CR 210 (Castillo Depo. 21/20-22/10; 43/7-9). Nobody from AK was at the job site at that time; no one from AK gave Suarez or the other C&B crew members the traffic control signs, no one from AK saw the C&B crew load the signs into the truck or drive away. CR 210 (Castillo Depo. 23/2-3, 9-12); CR 225 (83/4-18). No one from AK told the C&B crew, including Suarez, how to place the signs in the truck or where to place themselves either in the cab or bed of the truck or on the bumper that morning. CR 211 (Castillo Depo. 25/16-24, 26/5-11).

After the signs were loaded into Castillo's pickup truck, two crew members got in the cab with Castillo. CR 211 (Castillo Depo. 26/25 - 27/2). Suarez and another crew member decided for the first time to ride straddling (with one foot each inside the bed of the truck and one foot on the outside bumper) the tailgate of C&B's pickup, which was carrying the road signs. CR 212 (Castillo Depo. 29/14-25; 30/18-31/10; 31/21-23). Castillo told the two crew members in the back of the truck, including Suarez, to sit in the cab, but they did not want to and refused to do so. CR 212 (Castillo Depo. 30/25-31/10). Castillo was in charge of directing Suarez and if he saw Suarez doing something he didn't want him to do, he had the authority to tell him to stop. CR 219 (Castillo Depo. 58/19-59/9). Sometimes Suarez followed Castillo's instructions; sometimes he did not. *Id.*

Suarez knew that Castillo was going to drive the truck down the road to place the signs and chose to ride straddling the tailgate, despite Castillo telling him to sit down in the bed of the truck. CR 213 (Castillo Depo. 35/6-16). As Castillo started driving, however, he could see in his rearview mirror that the two men were still riding with one foot in the bed and one foot on the bumper—straddling the tailgate. CR 212 (Castillo Depo. 29/9-30/60. This was the first time Castillo had ever seen them ride on the truck this way. CR 212 (Castillo Depo. 30/18-23). Therefore, nobody from AK could have ever seen the C&B crew, including Suarez, ride on the truck this way. CR 225 (Castillo Depo. 82/15-83/1).

As he drove, Castillo watched the men in his rearview mirror. When they were about two hundred feet from where the crew had loaded the signs, he saw a gust of wind lift a sign and then saw Suarez and the other man fall off the back of the truck. CR 212 (Castillo Depo. 32/15-22). Castillo stopped the truck immediately and ran to help Suarez and the other crew member. CR 214 (Castillo Depo. 37/20-23). Suarez was unconscious on the roadway, so Castillo called 911 and his employer, White. CR 214 (Castillo Depo. 38/17-23; 40/22-23). Suarez never regained consciousness and died later that same day. CR 223 (Castillo Depo. 76/1-4).

### D. AK Owed no Duty to Suarez

The Trial Court determined that Chapter 95 does not apply to the facts of this case. CR 302-303(Letter from Judge Williams). AK was still entitled to a summary judgment under Texas common law concerning Plaintiff's negligence claims. AK owed no duty to Suarez, because AK neither exercised nor retained sufficient control over the manner in which Suarez performed the work which caused his death nor had actual knowledge of the danger or condition which resulted in Suarez's death.

#### 1. General rule - Since C&B was an independent contractor, AK had no duty to make sure that C&B safely performed its work

In general, a premises owner or general contractor has no duty to ensure that an independent contractor safely performs his work. *Hoechst-Celanese v. Mendez*, 967 S.W.2d 354, 356 (Tex. 1998). An independent contractor is in a better position than a premises owner or general contractor to inspect, eliminate or warn of danger arising from the independent contractor's work. *Marathan Corp. v. Pitzner,* 55 S.W.3d 114, 131 (Tex. App—Corpus Christi 2001), *rev'd on other grounds,* 106 S.W.3d 724 (Tex. 2003). A general contractor can reasonably expect an independent contractor to instruct its own employees how to do work safely. *General Electric v. Moritz*, 257 S.W.3d 211, 215-216 (Tex. 2008).

## 2. Exception to general rule

A limited exception to this general rule exists when a general contractor: (1) retains a right of control over the manner in which work is performed, other than the right to order work to stop and start or to inspect progress or receive reports, and (2) has actual knowledge of the danger or condition resulting in the personal injury, death or property damage and failed to adequately warn. *Dow Chemical Co. v. Bright*, 89 S.W.3d 602, 606; 609 (Tex. 2002).

### a. AK had no actual knowledge of the danger or condition that led to Suarez's death

First, and most importantly, the summary judgment evidence disproves that AK had actual knowledge of the danger or condition that led to Suarez's accident and caused his death. AK's summary judgment evidence is clear, positive, direct and uncontroverted by Plaintiffs: (a) two crew members, including Suarez, had never ridden out on the tailgate before; (b) nobody from AK was present to see Suarez ride out on the tailgate that morning; and (c) Suarez had been told by his employer, Casey White, not to ride in the bed or on the tailgate of White's trucks. It was Suarez's impromptu decision to ride on the tailgate of the C&B truck that proximately caused his death. The summary judgment evidence conclusively disproves that AK actually knew about the condition which caused Suarez's death. AK was properly entitled to summary judgment on any claim of liability for it's independent contractor's actions.

13

### b. AK did not exercise sufficient control over Suarez's work when he was injured

The summary judgment evidence disproved that AK had or exercised any control over the manner in which C&B was transporting its crew and signs for traffic control. Again, the causal connection must be tight: the control must relate directly to the injury caused by the supposed negligence. Texas law is clear that a nexus must be shown between the retained control and the specific condition or activity that caused the injury. *Shell Oil v. Khan*, 138 S.W.3d 288, 294 (Tex. 2004). It is not enough to show that a defendant controlled one aspect of the independent contractor's activities if the injury arose from another. *Id.* at 294.

Lumping activities together under an umbrella does not work: "it is not enough to show that an oil company controlled some security activities if the ones it controlled had nothing to do" with the cause of the injury. *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 294 (Tex. 2004). Likewise, it is not enough to show that AK controlled some traffic control activities if the ones it controlled had nothing to do with the injury—and that is precisely the case here. Summary judgment is proper because AK has disproven supervisory control over the activity that caused Suarez'ss injury.

Plaintiffs' summary judgment evidence missed the mark and failed to raise a fact issue linking AK's alleged control and the activity that actually caused Suarez's injury and death. The scope of duty is limited to the scope of supervisory

14

control.  *Hoeschst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 357 (Tex. 1998). The cause of Suarez's unfortunate accident and death was his decision to ride straddling the tailgate of his employer's truck as the crew moved signs.  The only evidence of supervisory control by AK is that it enforced TxDOT rules regarding spacing of traffic cones, on limited occasions, days prior to Suarez's accident. Spacing of traffic cones had nothing to do with Suarez's injury which involved the transportation of traffic control signs.

The only summary judgment evidence offered by Plaintiff on this point is that AK "omitted any information about how signs were to be secured or moved before they were placed." CR 235.  Put simply, the only evidence of control Plaintiff can offer with respect to loading and moving signs is a complete lack of control by AK.  This fails as a matter of law to constitute evidence of control.

AK's summary judgment evidence conclusively proved that AK was never involved in any way with the manner in which the C&B White crew moved the traffic control signs around and Plaintiff did not introduce any summary judgment evidence to the contrary.  Thus, the summary judgment evidence disproved the element of duty for Plaintiff's negligence claim.

## IV. Appellant's Argument Based on Chapter 95 of the Texas Civil Practice and Remedies Code is Moot

The entirety of Appellant's argument that related to Chapter 95 of the Texas Civil Practice and Remedies Code concerning whether or not Appellee is an owner

or someone else which is covered by the statute (found on pages 14-18 of Appellant's Brief) must be ignored by this Court because on May 28, 2014, the Trial Court determined that Chapter 95 does not apply to the facts of this case and specifically stated that it was not granting the summary judgment based on Chapter 95, but on other grounds included in the motion for summary judgment. CR 302-303.

**V.     Excerpts from the Texas Manual on Uniform Traffic Control Devices at Tab 3 of the Appendix to Appellant's Brief are not Part of the Summary Judgment Record and Can't be Considered in this Appeal**

Appellant did not attach the excerpts from the Texas Manual on Uniform Traffic Control Devices found at tab 3 of the Appendix to her Brief to her summary judgment papers and they were not part of the summary judgment record before the Trial Court. They are not part of the Clerk's Record or the Supplemental Clerk's Record for this appeal. Therefore, they cannot be considered by this court. *K-Six Television, Inc. v. Santiago*, 75 S.W.3d 91, 96–97 (Tex. App.—San Antonio 2002, no pet.)(documents attached to briefs that are not part of the summary judgment record cannot be considered on appeal). Further, these excerpts are irrelevant as they have nothing to do with how Suarez loaded the traffic control signs into the back of a pick up and rode straddling the tailgate of the pickup down the road to transport these signs to the places where they needed to be placed on

16

the roadway; instead, they govern the size, placement, design and maintenance of traffic control signs.

## VI.    Plaintiff failed to Timely Perfect This Appeal

Appellant failed to timely perfect this appeal. Her Motion for New Trial was due to be filed on July 9, 2014 (30 days after the Summary Judgment was signed on June 9, 2014), as was her Notice of Appeal. The Motion for New Trial was untimely filed on July 10, 2014, and the Notice of Appeal was untimely filed on July 11, 2014.

## CONCLUSION AND PRAYER

In light of the foregoing, Allen Keller Co. respectfully prays that this Appellate Court affirm the judgment of the Trial Court and grant all other relief to which Allen Keller Co. is entitled.

Respectfully submitted,

**LUCERO | WOLLAM, P.L.L.C.**

*/s/ Erik Wollam*

_____

ERIK R. WOLLAM
State Bar No. 00788705
ELLEN GERSON TAGTMEIER
State Bar No. 07827700
13590 Ranch Road 12
Wimberley, Texas 78676
Telephone: (512) 485-3500
Facsimile: (512) 485-3501
ewollam@lucerowollam.com
etagtmeier@lucerowollam.com

**ATTORNEYS FOR APPELLEE
ALLEN KELLER CO. I LLC**

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4(i)(3), the undersigned hereby certifies that according to the word count function of the computer program used to generate the document, the portions of the Appellee's Brief subject to the rule contain 4,049 words total and that the text thereof is in 14 point Times New Roman font.

*/s/ Erik Wollam*

_____

Erik R. Wollam

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Appellee's Brief was served on the following counsel by electronic filing and email on the 30th day of December, 2014:

Michael G. Sawicki
Sawicki Law
4040 N. Central Expressway, Ste. 850
Dallas, Texas 75204

Charles E. Soechting (local counsel)
The Soechting Law Firm
3331 Ranch Road 12, Suite 107
San Marcos, Texas 78666

*/s/ Erik Wollam*

_____

Erik R. Wollam

# APPENDIX

A.  Summary Judgment Order signed by the Trial Court on June 9, 2014 (CR 304 – 307).

B.  Letter dated May 28, 2014, from the Trial Court (CR 302 – 303)

C.  Pages cited in this Brief from the Deposition of Casey White (President of C&B White, Suarez's employer)

D.  Pages cited in this Brief from the Deposition of Robert Moreno Castillo (Crew leader of the C&B White crew on which Suarez worked)