

# Fourth Court of Appeals
## San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-22-00417-CV

Rigoberto **SANCHEZ**, Jr.,
Appellant

v.

**COTT BEVERAGES**, Inc.,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CI02505
Honorable Cathleen M. Stryker, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Beth Watkins, Justice
                Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed: August 16, 2023

AFFIRMED

Appellant Rigoberto Sanchez, an employee of roofing subcontractor EMC Roofing ("EMC"), appeals from a take nothing summary judgment on his negligence claim rendered in favor of appellee Cott Beverages, Inc. ("Cott") for injuries that Sanchez sustained while working on a Cott facility roof that was under repair by Ken Cloud Roofing Company, LLC ("Cloud"), a general contractor. In two issues, which we construe as four, Sanchez complains that the trial court

---

[1] Retired Fourth Court of Appeals Chief Justice Sandee Bryan Marion assigned to this court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003.

erred in granting Cott's motion for summary judgment — advanced on no evidence and traditional grounds — because he presented legally sufficient evidence that Cott: (1) retained contractual control over Cloud's roofing repair work so as to preclude application of Chapter 95 of the Texas Civil Practice and Remedies Code; (2) exercised actual control over Cloud's roofing repair work so as to preclude application of Chapter 95; (3) had actual knowledge of an unreasonably dangerous condition; and (4) failed to adequately warn Sanchez of an unreasonably dangerous condition. We affirm.

## I. BACKGROUND

Sanchez fell and sustained injuries while working on the roof of a beverage bottling facility owned and operated by Cott. Sanchez then sued Cott and Cloud, a roofing contractor Cott hired, for negligence. Cloud asserted a cross claim against Cott, wherein it sought "actual damages, consequential damages, all costs, interest and attorney's fees as allowed by law." Cott filed a combined motion for no evidence and traditional summary judgment against Sanchez's negligence claim and Cloud's cross claim. The traditional portion of Cott's motion primarily relied on the contract between Cott and Cloud. Sanchez's response referenced the deposition testimony of (1) Caleb Cloud, a sales estimator with Cloud; (2) Ken Cloud, a member of the limited liability company that operates Cloud; and (3) Troy Nievaard, the manager of the Cott facility.

The summary judgment record establishes that when the roof on Cott's beverage bottling facility sustained hail damage, Cott solicited a bid from Cloud for roofing repair work. Caleb inspected the roof and prepared a bid to repair it using a silicone membrane. Before Caleb was allowed on the facility's roof, Cott issued a "Roof Access Permit." The permit, with the handwritten portions in italics, provides in relevant part:

**This Roof Access Permit is required for any temporary operation involving access to the roof surface.**

### INSTRUCTIONS

1) Before accessing the roof, fill out the permit info and obtain an approval signature.
2) Maintain the permit while on the roof.
3) Following job completion, return to approver.

**DATE**:       *7/1/16*

**LOCATION/BUILDING**:   *Main*

**AREA OF ROOF**:       *All*

**NATURE OF WORK TO BE PERFORMED ON ROOF**:       *Taking Measurements*

**HAZARDS PRESENT**:
- ✓ Roof top leading edges
- ✓ Roof openings (skylights, access hatch, vent opening, etc.)
- ✓ Roof surface conditions (wet, slick, sloped, etc.)
- ✓ Roof construction (tin corrugate, rubber lined, stone, tile, shingle, etc.)
- ✓ Roof structural integrity.
- ✓ Trip hazards (piping, conduit, ductwork, bracing, etc.)
- ✓ Weather conditions (high winds, lightning, rain, snow & ice, visibility, etc.)
-   Other (describe):

**PRECAUTIONS TAKEN**:
    Barrier at leading edges
    Roof openings guarded (skylights, access hatch, vent opening, etc.)
    Trip hazards removed or identified (piping, conduit, ductwork, bracing, etc.)
    Fall Protection utilized
    Other (describe):

Cott accepted Cloud's bid, and the two entities executed a $1,745,957.40 contract.  The contract,

drafted on Cloud letterhead, provides in relevant part:

**CLOUD ROOFING WILL PROVIDE ALL NECESSARY BARICADES AND CAUTION TAPE FOR THE PROTECTION OF PEDESTRIANS BELOW WORK AREA**

. . .

**ACCESS TO WORK.**  Purchaser grants the contractor full access to the perimeter of building for the staging and execution of the roofing process.

**SUPERVISION AND QUALITY CONTROL.** The contractor shall supervise and direct the work using his best skill and attention.  The contractor shall solely be responsible for all construction means, methods, techniques, sequences and procedures and for contracting and performing all portions of the work and quality control under the contract.

Cloud, in turn, subcontracted with EMC, Sanchez's employer and an entity owned by Elpidio Irugas, to assist on the project.

Caleb testified that Cott stored the drums of silicone membrane used in the repair project at its facility. When roofers needed a drum at a particular location, they would ask a Cott employee and "[o]ne of their guys would bring it out with a forklift." Nievaard acknowledged that Cott employees facilitated the project by placing the drums for roofers as needed. Nievaard specifically recalled, "helping with making sure that raw materials that we were storing in one part of our warehouse or garage were moved out so the crew had access to them."

On August 30, 2016, Cott issued a second roof access permit to Caleb, Irugas, and Irguas's "workers." The second permit's template is identical to the first, and in addition to all of the "hazards present" being checked, all of the "precautions taken," except "Other (described)," are checked. Ken testified that the handwritten portions appear to be the handwriting of his son, Caleb, but Ken did not "think [Caleb] would have checked" the boxes the way that they were checked. Ken explained the variation between the first and second permits:

> Q.     All right. When Caleb [was] on the roof to take measurements, [he was] there on behalf of Cloud as a sales team or estimators, correct?
>
> A.     Yes.
>
> Q.     In your experience, did Cloud salesmen take the same precautions on roofs in terms of fall protection, tying off, guarding barrier around hazards that you would expect of the roofing crew?
>
> A.     No.
>
> Q.     And so that would, again, explain and make sense why precautions were not listed when they were simply up there to observe and get some measurements?
>
> A.     Correct.
>
> Q.     All right. But for purposes of the work, shown on [the second roof access permit], you would expect your roofing crew to take precautions, correct?

A.    Yes.

Q.    And those precautions are the precautions that are checked off under precautions taken, correct?

A.    Yes.

Q.    From Cloud Roofing's perspective, the checked off precautions to be taken you expected EMC to do that, correct?

A.    That's correct.

Q.    You did not expect your customer to do that, correct?

A.    That's correct.

Q.    And those precautions include barriers at the leading edges, correct?

A.    Yes.

Q.    Guarding against the roof openings that were disclosed in the upper section?

A.    Yes.

Q.    Either removing a trip hazard or at least identifying them if you can't remove them, correct?

A.    Correct.

Q.    Using fall protection, correct?

A.    Correct.

On February 1, 2017, Sanchez was working on the Cott facility's roof when he fell backwards and through an unbarricaded skylight. The aforementioned litigation and summary-judgment filings followed. The trial court granted Cott's summary judgment motion in its entirety, and it severed Sanchez's negligence claim against Cott from his negligence claim against Cloud. Sanchez timely appealed.[2]

---

[2] Cloud is not a party to this appeal.

## II. DISCUSSION

### A.      Standard of Review

We review a trial court's decision to grant summary judgment *de novo*. *Hillis v. McCall*, 602 S.W.3d 436, 439 (Tex. 2020); *Valence Oprt. Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubt in the nonmovant's favor. *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 811 (Tex. 2019).

In a traditional motion, the party moving for summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In contrast, once a no-evidence motion is filed, the burden shifts to the respondent to present evidence raising an issue of material fact to the elements specified in the motion upon which the respondent would have the burden of proof. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). In reviewing both traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam).

### B.      Chapter 95

"Chapter 95 enunciates a general rule of non-liability for property owners when a contractor or subcontractor or an employee of a contractor or subcontractor is injured while performing repairs or construction." *Rosa v. Mestena Operating, LLC*, 461 S.W.3d 181, 182–87 (Tex. App.—San Antonio 2014, pet. denied). Sanchez concedes that Chapter 95 applies to the negligence claim he asserted against Cott. Accordingly, the burden was on Sanchez to establish that Cott (1) exercised or retained control over how Cloud's work was performed **and** (2) specifically approved or had actual knowledge of the allegedly dangerous condition Sanchez

claims to have caused the accident. *See Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 514 (Tex. 2022) (stating that once a movant establishes the applicability of Chapter 95, the burden is on the plaintiff to satisfy both prongs of section 95.003 if a no-evidence motion for summary judgment is involved).[3]

A plaintiff may prove control by either showing there is a contractual right of control or the property owner exercised actual control. *Id*. at 515 (citing *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002)). The control must extend to "the means, methods, or details of the independent contractor's work . . . such that the [independent] contractor is not entirely free to do the work in his own way." *Id*. at 514 (quoting *AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289, 295 (Tex. 2020)).

## C. Contractual Control

In Sanchez's first issue, he contends that he presented legally sufficient evidence that Cott retained contractual control over Cloud's roofing repair work so as to preclude application of Chapter 95. Sanchez's argument, as we read it, consists of three parts.[4] First, Sanchez argues that, notwithstanding the "Supervision and Quality Control" provision, the contract between Cott and

---

[3] Section 95.003 of the Texas Civil Practice and Remedies Code provides:

> A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:
>
> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and
>
> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

TEX. CIV. PRAC. & REM. CODE ANN. § 95.003.

[4] As legal authority for Sanchez's contractual control argument, he references only *Barfield v. SandRidge Energy, Inc.*, 630 S.W.3d 109, 117 (Tex. App.—El Paso 2020), which the Texas Supreme Court reversed. 642 S.W.3d 502 (Tex. 2022).

Cloud "is silent as to whose [sic] responsible for safety on the roof of Cott's facility." This "silence" is, according to Sanchez, some evidence that Cott retained contractual control. Second, Sanchez contends that the contract's provision requiring Cloud to "provide all necessary barricades and caution tape for the protection of pedestrians below the work area," against the contract's "silence" regarding who controlled the "safety on the roof," is some evidence that Cott retained contractual control. Third, Sanchez argues that Cott's practice of issuing roof access permits and the fact that the second permit issued to Irugas noted several "potential hazards," such as "roof openings," and "precautions taken" is some evidence that Cott retained contractual control. Specifically, Sanchez argues:

> It is Cott's position that Cloud was to have taken these precautions and that they were discussed with Cloud. There is no evidence of any of these conversations. If, as Cott contends, the precautions were to be taken by Cloud, there is no indication that Cott ever verified this either. Therefore, there is a fact issue as to who filed out the second permit . . . which would be indicative of who was in charge of safety on the roof.

Cott responds by arguing that if Sanchez is correct that the contract is silent regarding who controlled "safety issues," then Sanchez admits "that he cannot show contractual control regarding safety was given to Cott, which dooms any claims related to contractual control . . . ." Alternatively, Cott argues that, even if the second permit were incorporated into the contract, Sanchez "makes no effort to explain how the [the permit] increases the probability and severity of injury." Therefore, Sanchez still has presented legally insufficient evidence that Cott exercised control over the means, methods, or details of Cloud's work such that it was not entirely free to do the work in its own way.

As to Cott's alternative argument, we find guidance in the Texas Supreme Court's opinion in *Shell Oil Company v. Khan*, 138 S.W.3d 288 (Tex. 2004).[5] In *Shell Oil*, a gas station operator and an oil company entered into a lease and dealer agreement. *Id*. at 291. The agreement "specifically stated that [the operator] was an independent contractor and [the oil company] had no right to control operations." *Id*. at 292. An employee of the operator was shot in the leg while cleaning the service-bay areas in the early morning hours. *Id*. at 291. The employee sued the oil company for negligence, and he argued that the oil company "controlled several security-related activities at the station." *Id*. at 292. The oil company moved for summary judgment "on the basis that it owed [the employee] no duty." *Id*. at 291. In the employee's response, he argued, among other things, that the agreement gave the oil company a right to control training and that it "distributed a training manual to all dealers and required them to take a training course that addressed security and other topics." *Id*. at 293. The trial court granted the oil company's motion for summary judgment, the court of appeals reversed, and the Texas Supreme Court held that the trial court properly granted summary judgment. *Id*. at 298.

The Texas Supreme Court rejected the employee's responsive argument for four reasons. *Id*. at 293. Two of the reasons were because:

> . . . it is not enough to show that an oil company controlled some security activities if the ones it controlled had nothing to do with the criminal act that ultimately

---

[5] We look to *Shell Oil*, even though it is not a Chapter 95 case, because the supreme court has done so under similar circumstances. In *Energen Resources*, the Texas Supreme Court referenced *Dow Chemical Co. v. Bright*, and noted:

> *Bright* is not a Chapter 95 case. But in analyzing the control prong of section 95.003, we have consulted our decisions regarding a property owner's duties to independent contractors over whose work the property owner has "some control." *See Ineos USA, L.L.C. v. Elmgren*, 505 S.W.3d 555, 561 (Tex. 2016) (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985)). One court of appeals has suggested that section 95.003(1) is a codification of our holding in *Redinger*. *See Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 699 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

*Energen Res. Corp.*, 642 S.W.3d at 515, n.13. As with *Bright*, *Shell Oil* is a decision regarding a property owner's duties to independent contractors over whose work the property owner has "some control." *See id*.; *Shell Oil Co.*, 138 S.W.3d at 293–94.

occurred. [The employee] does not cite any errors or omissions in [the oil company's] manual or training course; instead, his complaint is that he did not receive the same training. Because no errors or omissions in [the oil company's] training or manual caused [the employee's] injuries, [the oil company's] right to control them creates no nexus with the injuries [the employee] alleges.

Finally, while the manual excerpts in the record include measures that might be taken before and after robberies, they were clearly labeled as suggestions and recommendations. We have held repeatedly (following the Restatement) that merely making recommendations is no evidence of a right to control. Accordingly, [the oil company] had neither contractual nor actual control of [the employee's] training.

*Id*. at 293–94 (footnotes omitted).

Assuming without deciding that the second permit merged into the contract, Sanchez presented no evidence that Cott contractually controlled the "precautions taken" in the second permit. Sanchez acknowledges that he does not know who checked off the "precautions taken" boxes in the second permit. The equal inference rule does not allow us to take this as any evidence that a Cott employee checked off the boxes because it is equally likely that an employee of Cloud or EMC did so. *United Rentals N. A., Inc. v. Evans*, 668 S.W.3d 627, 642 (Tex. 2023) ("Testimony that gives rise to any number of inferences, none more probable than another, is legally insufficient to support the inference of a fact.") (internal quotation marks and citation omitted). In contrast, it is undisputed that Cott prepared the template. However, Cott's preparation of the permit's template — before any boxes were manually checked — is not evidence of it contractually agreeing to control the potential "precautions taken," especially in light of the "Supervision and Quality Control" provision that made Cloud "solely [] responsible for all construction means, methods, techniques, sequences and procedures." *See Shell Oil*, 138 S.W.3d at 292 ("We construe contracts as a whole in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."). Like the safety manual in *Shell Oil*, Cott's printing

of potential precautions to be taken on the permit form "creates no nexus with the injuries [Sanchez] alleges." *Id*. at 294.

We overrule Sanchez's first issue.

**D.     Actual Control**

In Sanchez's second issue, he contends that he presented legally sufficient evidence that Cott exercised actual control over the "operative details," which Sanchez defines as "applying a silicone membrane to the roof." Sanchez's argument is twofold.

First, Sanchez highlights Caleb's and Nievaard's acknowledgement that Cott stored drums of silicone roofing membrane and Cott employees used a Cott-owned forklift to position the drums for use by the roofers. Sanchez references our opinion in *Hernandez v. Amistad Ready Mix, Inc.*, 513 S.W.3d 773 (Tex. App.—San Antonio 2017, no pet.), as supporting legal authority. In *Hernandez*, a subcontractor's employee was injured when he fell from a forklift operated by a co-worker. *Id*. at 775. We held that a fact issue existed regarding the general contractor's control where the general contractor provided the forklift and the pallet on which the injured employee was standing, knew the employees were not using fall-protection equipment, and had disposed of the forklift's previously installed "safety basket" attachment. *Id*. at 777.

Cott responds by arguing that Sanchez's reliance on *Hernandez* is misplaced. Specifically, Cott argues that "there is no evidence that Cott [] actively directed *any* of [Sanchez's] acts [] either at the time of or before the accident, much less *required* [Sanchez] to do his job in a particular manner." (Emphasis in original).

Sanchez's reliance on *Hernandez* is misplaced. Unlike in *Hernandez*, there is no evidence that the use of a Cott-owned forklift to position drums of silicone roofing membrane caused Sanchez's injury. Moreover, there is no evidence that Cott "personally observed a safety hazard

and nonetheless approved of continuing the work" so as to raise a fact issue regarding actual control. *See JBL Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 868 (Tex. 2021).

Second, Sanchez argues that "Cloud was under the impression that Cott retained a supervisory right to control the work relating to the safety and protection of individuals working in and around the roof." As support, Sanchez references Ken's answer to Sanchez's question of whether "it's Cloud position that it was Cott's responsibility to ensure that the roof openings were safe, right?" Cott objected to the form of the question, and Ken answered, "Yes. It was their building."

Ken's affirmance that it was Cott's responsibility to ensure that "the roof openings were safe" because "[i]t was their building" cannot reasonably be inferred to support the notion that Cott "retained or exercised 'supervisory control . . . relate[d] to the condition or activity that caused the injury.'" *Energen Res. Corp.*, 642 S.W.3d at 515 (quoting *Clayton W. Williams, Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997)). Ken's response was not limited in time or related to the work Sanchez was performing. Relatedly, Cloud's "impression" merely reflects Cott's general supervisory right to control the roofing repair project, which does not trigger liability. *Id*. ("To establish 'control' under section 95.003(1), evidence of a property owner's 'right to order the work to start or stop or to inspect progress or receive reports' is insufficient.") (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 95.003(1)).[6]

We overrule Sanchez's second issue.

---

[6] The latter half of Sanchez's brief contains approximately eighty-three bullet points, grouped under various headings. When, as here, there are multiple grounds asserted for summary judgment and the order is silent as to the ground upon which summary judgment was granted, the appellant must negate all grounds on appeal. *See, e.g., B.C. v. Steak & Shake Operations, Inc.*, 512 S.W.3d 276, 281 n.3 (Tex. 2017). Because Sanchez did not carry his appellate burden, we conclude any remaining issues are not necessary to final disposition of the appeal and, therefore, decline to address them. *See* TEX. R. APP. P. 47.1.

## III. CONCLUSION

We affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice